685 So.2d 432 (1996)
James R. BONNER, Sr., et al., Plaintiff-Appellant,
v.
LINCOLN PARISH SCHOOL BOARD, Defendant-Appellee.
No. 28993-CA.
Court of Appeal of Louisiana, Second Circuit.
December 11, 1996.
*433 Paul Henry Kidd, Monroe, for Plaintiff-Appellant.
Robert W. Levy, District Attorney, Samuel Andrew Shealy, Assistant District Attorney, for Defendant-Appellee.
Before MARVIN, HIGHTOWER and BROWN, JJ.
MARVIN, Chief Judge.
James Bonner, Sr., as administrator of the estate of his minor son, James Bonner, Jr., appeals a judgment rejecting his demand to preliminarily enjoin the Lincoln Parish School Board from removing his son from the Simsboro High School varsity basketball team until such time as the school board grants his son a "due process hearing" on the allegation that he was in possession of alcohol on a school board bus.
We affirm.

FACTS
James Bonner, Jr., a sophomore at Simsboro High School, was a member of the varsity basketball team and the local chapter of the Fellowship of Christian Athletes. The Simsboro High School FCA subscribed to programs that promoted the reading of Bible verses, abstinence from alcohol and drugs, and participation at athletic events.
On September 30, 1995, in an activity sponsored by the North Central Louisiana FCA, James, along with approximately 30 other SHS students, traveled on a Lincoln Parish School Board bus to the Louisiana Tech Tulsa football game at Independence Stadium in Shreveport. Ms. Debbie Pender, Ms. Nancy Giesse and Steve Miller served as chaperones for the trip.
During the return trip to Simsboro, Giesse discovered alcohol in the possession of some of the Simsboro High School students. According to Giesse, some students told her to check James's jacket for alcohol. After noticing that it was unusually heavy, Giesse instructed James to pull out whatever was in his jacket. James then unzipped his jacket, removed two unopened bottles of beer and handed them to Giesse. James denied any involvement, saying that he did not know where the alcohol came from.
The following Monday, October 2, 1995, Simsboro High School Principal Harry Jones turned the investigation of the incident over to the assistant principal, Rik Cason. Cason questioned the chaperones and students who were seated in the vicinity of where the alcohol was found. The chaperones also submitted written accounts of the incident.
Cason met with James twice on Wednesday, October 4, 1995, allowing him an opportunity to further explain his version of the events. James told Cason that he left his jacket in the stands at the football game and someone else placed it on the bus. He also stated that the alcohol was on the seat under his jacket, rather than zipped in a pocket. Later that day, the principal and Cason informed James that, based upon the reports of the adult chaperones, they were suspending him for nine days and recommending that he be expelled for possession of alcohol. Jones and Cason also provided James written notification of his suspension and recommendation for expulsion, which James delivered to his parents that day. The notice also contained the following: "Parent Conference Required: Scheduled for TBA, Call Mr. Hinton at LPSB."
Mr. and Mrs. Bonner and James, along with W.D. Walker from the NAACP, Reverend Jessie Hill and other ministers and parents, discussed the matter with Principal Jones at the school on Friday morning, October 6. That afternoon, the Bonners met with Richard Hinton of the Lincoln Parish School Board and scheduled a formal hearing for the following Monday, October 9.
*434 On October 9, Hinton, as designee of the superintendent of schools, presided as hearing officer at the hearing at the school board office. The hearing was attended by Mr. and Mrs. Bonner, James and their attorney, Willie Hunter. The evidence against James consisted of the testimony of Cason and Giesse. James's attorney submitted questions to Hinton to be asked of the witnesses. James also responded to questions asked by his attorney.
Hinton concluded that although James did not purchase the alcohol, he "was responsible and did have possession in his jacket of the alcohol." Hinton's recommendation was against expulsion and in favor of reducing James's suspension to five days. Hinton advised the Bonners of his conclusions, informing them that his decision was "final."
On October 13, 1995, Mr. Bonner appealed Hinton's decision, requesting a hearing before the entire Lincoln Parish School Board. The school board denied Bonner's request for a hearing on October 20, 1995.
James Nail, Jr., the Simsboro High School varsity basketball coach, dismissed James from the team on October 25, 1995, for the remainder of the season. According to Coach Nail, all student athletes, including all players on his basketball team, agree to abstain from alcohol and drugs and are provided with a statement of assurance and commitment not to use alcohol or drugs. Coach Nail stated that James received such a statement and that his players were well aware of this policy, as he spoke to them about it frequently.
Mr. Bonner brought an action in the trial court for injunctive relief, challenging the procedures employed by the school board and his son's "expulsion" from the basketball team. Following a 3½ day trial, the trial court denied Bonner's application for an injunction. Mr. Bonner appeals the trial court's judgment.

DISCUSSION
Mr. Bonner complains that James was not afforded due process, arguing that he was denied the right to confront his accusers and was not allowed to cross-examine witnesses against him.
The fountainhead case on student discipline is Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Goss held that both a student's property interest in educational benefits that are temporarily denied him and his "liberty" interest in reputation are implicated by student suspensions to the extent that due process applies. A student facing suspension of 10 days or less must be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence and an opportunity to present his side of the story. Id., 419 U.S. at 581-83, 95 S.Ct. at 740.
[1] Goss also stated:
We stop short of construing the Due Process Clause to require, countrywide, that hearings in connection with short suspensions must afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident. Brief disciplinary suspensions are almost countless. To impose in each such case even truncated trial-type procedures might well overwhelm administrative facilities in many places and, by diverting resources, cost more than it would save in educational effectiveness. Id.

Goss simply requires an "informal give-andtake" between the student and the administrative body dismissing him that, at least, will afford the student "the opportunity to characterize his conduct and put it in what he deems the proper context." Goss, 419 U.S. at 584, 95 S.Ct. at 741; Board of Curators of the University of Missouri v. Horowitz, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978).
La.R.S. 17:416 sets forth the grounds and procedure for suspending or expelling a student. This statute affords due process in accord with Goss. See Whiteside v. Kay, 446 F.Supp. 716 (W.D.La.1978); Williams v. Turner, 382 So.2d 1040 (La.App. 2d Cir. 1980). A school principal is authorized to suspend any pupil who possesses alcoholic beverages on a school bus owned by, contracted to, or jointly owned by any city or *435 parish school board. § 416 A(3)(a)(vi). The principal, or his designee, shall advise the pupil of the particular misconduct of which he is accused as well as the basis for such, and the pupil shall be given an opportunity to explain his version of the facts. § 416 A(3)(b)(I).
This record shows that James had several opportunities to explain his version of the events. He met with Vice Principal Cason twice on October 4, 1995. He was provided with written notice explaining the charge and suspension on October 4, which he delivered to his parents that day. James had two additional opportunities to provide his story when he and his parents met with Principal Jones and then with Mr. Hinton.
La.R.S. 17:416 also provides a right to appeal to the city or parish superintendent of schools, or his designee, who shall conduct a hearing on the merits. The decision of the superintendent on the merits of the case, as well as the term of suspension, shall be final. § 416 A(3)(c); our emphasis. Again, the statute was followed to the letter. James, Mr. and Mrs. Bonner and their attorney were provided a hearing before Mr. Hinton, the superintendent's designee, on October 9, 1995. James and his parents were, again, fully informed of the charges against James, provided with the names of his accusers, and given yet another opportunity to present a defense. We conclude the school board fully complied with the requirements of La.R.S. 17:416 and Goss v. Lopez, supra.
James's suspension was reduced to five days and the previous recommendation for expulsion was dropped. Thus, James did not have a right to further appeal the decision to the entire school board. § 416 A(3)(c), C(4).
Insofar as James's "expulsion" from the basketball team is concerned, we recognize, and do not interfere with, Coach Nail's discretion to discipline his players. Participation in interscholastic athletics is not a constitutionally protected interest or right and must be deemed to fall outside the protection of due process. See Mitchell v. Louisiana High Sch. Athletic Assoc., 430 F.2d 1155 (5th Cir.1970); Walsh v. Louisiana High Sch. Athletic Assoc., 616 F.2d 152 (5th Cir.1980), rehearing denied, cert. denied; Hardy v. University Interscholastic League, 759 F.2d 1233 (5th Cir.1985); State Board of Education v. National Collegiate Athletic Assoc., 273 So.2d 912 (La.App. 3rd Cir.1973).
The court in Hardy concisely summarized the law:
We repeat: we are not super referees over high school athletic programs. Questions about eligibility for competition may loom large in the eyes of youths, and even their parents. We do not disparage their interest in concluding, as here, that these issues are not of constitutional magnitude. Behind this observation rest important values of federalism and the reality that the mighty force of the constitutional commands ought not be so trivialized.

Id., 759 F.2d at 1235; our emphasis.
We agree with the above summary. A due process hearing is not a prerequisite that is required before a high school coach, in any sport, may discipline his players. The absurdity in such a requirement is obvious.

CONCLUSION
James Bonner, Jr. was afforded due process in the proceedings resulting in his five-day suspension from school for possession of alcohol on a school board bus. He was not entitled to a due process hearing before being subjected to discipline by his high school basketball coach.

DECREE
The judgment, at appellant's cost, is AFFIRMED.