785 So.2d 57 (2001)
Jeanine McCALL, Individually and on behalf of her son Cedric McCall, Plaintiffs-Appellants,
v.
BOSSIER PARISH SCHOOL BOARD, Defendant-Appellee.
Francis White, Individually and on behalf of his son, Bryan White, Plaintiffs-Appellants,
v.
Bossier Parish School Board, Defendant-Appellee.
Nos. 34,983-CA, 34,984-CA.
Court of Appeal of Louisiana, Second Circuit.
March 16, 2001.
*58 Boggs & Thompson by Jeff R. Thompson, Bossier City, Counsel for Appellant.
Hammonds & Sills by Jon K. Guice, Monroe, Counsel for Appellee.
Before NORRIS, CARAWAY & DREW, JJ.
DREW, J.
At issue is whether the school administration and the Bossier Parish School Board (BPSB) complied with the law in disciplining Cedric McCall and Bryan White, two Parkway High School seniors expelled[1] from school and placed in the *59 alternative school. Their parents appealed the trial court judgment which, in effect, affirmed the actions of the school administration and the school board. The judgment itself rescinded a TRO directing that Cedric McCall and Bryan White be placed back into Parkway and denied the families' requests for injunctive relief against the expulsions. For the following reasons, the judgment of the lower court is vacated. This matter is remanded to the Bossier Parish School Board with directions.

FACTUAL AND PROCEDURAL BACKGROUND
The parents filed separate suits in Bossier Parish which were consolidated for trial. Their petitions alleged that the boys were suspended on November 29, 2000, for use/possession of a controlled substance. While arguing about the evidence in the record, the parties essentially agreed that the boys acknowledged they left school without authorization, smoked what they believed was marijuana and immediately returned to school where they were apprehended in a parking lot by a school official. Further, everyone agrees the boys admitted their misconduct.
The parents were notified of the suspensions. On November 29, 2000, the principal signed an "Out of School Suspension Notice" which stated that Cedric has been suspended for "07-USE/POSSESS CONTROLLED SUBSTANCE" The notice further stated:
Due Process requires at a minimum that a student who is suspended be given full notice of the charges against him and a reasonable opportunity to be heard. The statement appearing beneath this letter indicates that your child was indeed afforded due process.
On 12/6/2000 your child will be permitted to return to school unless before this date either of both parents in a conference with the principal have resolved this matter.
Finally, you should know that you have the right to appeal this suspension to the superintendent of schools.
The identical form was prepared for Bryan. The forms were signed by the Principal/Acting Principal. At the bottom is a statement that the student has been advised of the reason for his suspension and was given an opportunity to defend his actions. The date and name blanks are empty in the forms attached to the petition and the forms placed into evidence by the school board.
The next documents of record are BPSB Louisiana Department of Education School Behavior Reports both of which state the incident occurred 11/29/00. The form directs that the nature of the incident is to be checked and a list of specific incidents is to be placed in the remarks section. On Bryan White's form "# 07 USE/POSSESS CONTROLLED SUBSTANCE" is checked. On Cedric McCall's form "# 08 USE/POSSESS TOBACCO OR LIGHTER" is checked. On both forms the remarks are: "came to school under the influence-admitted it." The forms are checked that a conference was held with the student and that the student was suspended from 11/29 until 12/4. The forms are signed by the principal and undated.
The next documentation placed into the record are the "BPSB Documentation for Expulsion Hearing" forms which indicated due process compliance was done with both students by the principal on 11/29 and that parent contact was made by the principal the same day. In addition the form stated that behavior, grades, attendance and discipline reports had been done. These forms were signed December 4, 2000 by the Parkway principal and Judy Willcox, the hearing officer.
*60 The "Written Decision of Hearing Process" stated that under La. R.S. 17:416, a hearing was conducted at Parkway for the recommendation of expulsion of the two students. In addition to the principal, the hearing officer and Cedric McCall, his mother Jeannine McCall and his brother, Aaron McCall were present. The form indicates Cedric understood his right to due process (opportunity to be heard) and for a fair and impartial hearing. Further, the seriousness of the offense was explained. The hearing officer's notes are:
He left campus and then came back on campus. After lunch, Cedric came in late from the parking lot. He suspected he was under the influence. Cedric denied at first. He later admitted it. No arrest was made. A recommendation for expulsion has been made. He is a national honor society student.
The form is checked that the student agreed with the school's facts and that the student related:
He had nothing on him. He willing[ly] agreed to search. They were off campus. He did smoke marijuana. He uses about once a week. He is a senior. He was going to Florida State after graduation.
His mother does not agree with the school for the suspension. Mother went to the handbook. He made a mistake. This behavior has to stop. He has been disciplined. Their pastor was called and an appointment made. They are here to stand behind him. Mother's prayer today is that the handbook does not support this. He has never been a discipline problem.
The decision to uphold the recommendation for expulsion/exclusion was signed by the hearing officer and the school designee on December 4, 2000. The right to appeal the decision to the superintendent's designee was set out on the form. Notes indicated Cedric's mother left angry and refused to sign the form.
In addition to indicating he had been informed of his rights and understood the reason for the suspension and the seriousness of the charges, Bryan White's "Written Decision of Hearing Process" form showed that the principal, the hearing officer and Bryan, his parents, Francis and Penelope White, and Alan Powell were present. Mr. Saucier, the school designee, stated:
He was coming back from the parking lot during the day, which is against the school's policy. He cut third period. He denied it at first. He was questioned again and did admit to it. An arrest was not made. An expulsion was recommended.
Neither block is checked to indicate whether Bryan did or did not agree with the schools facts. The notes from Bryan's statement are:
Mr. Saucier did talk to him. Bryan left class. He did go to someone's home. He did come back on campus after using drugs (off campus). He doesn't think he was under the influence. He was gone from campus maybe an hour.
His parents' statements follow:
Mother wanted to ask a question. If her son denied doing this, would we be here? Mother believes in second chances. Mother went to Parkway. She is having a hard time with this. Her child mess[ed] up. Even criminals get a second chance. Mother said she has an attitude. They are not treated fairly. Mother said thinks there is a drug problem at Parkway. His band teacher wrote a letter for him. His mother wants a second chance.
Mr. White did not pick up on this. He has great respect for Mr. Saucier. He doesn't feel that anything is being done *61 at this level. They were verbally informed to call my office. He never used drugs on campus. The handbook is a guideline. His son did not use narcotics on this campus. We are condemning him. Don't screw up his whole life. He thinks they need to be allowed to go to school.
Mr. Powell, a character witness through the band and boy scouts, acknowledged that Bryan made a mistake. Bryan did what he was taught to do and told the truth. In Powell's opinion, Bryan was very responsible and not a detriment to the school. The recommendation for expulsion was upheld and the form was signed on December 4, 2000 by Bryan, his parents, Mr. Powell, the hearing officer and the school designee.
The parties took their appeal that same day to the superintendent's designee, Bettye McCauley, the Director of Student Services. Cedric and his mother attended the meeting after which McCauley issued a decision "not to expel but to offer an alternative to expulsion which is attendance at the Charlotte Mitchell Educational Center for the remainder of the year." The decision stated:
Cedric stated that he and three (3) friends left school during band class on November 29, 2000. He further stated that he was aware that drugs were about to be purchased. Cedric stated that they went to a trailer house in South Bossier purchased some marijuana went to a shed adjacent to the trailer house and smoked it. He further stated that he and his friends smoked marijuana from a pipe and from a joint. Cedric stated that they kept watch of time so that they would not miss their last class of the day.
Cedric asked that he be given another chance, that he was sorry for what he did and that he had used drugs before for over two years.
Bryan attended his appeal along with his parents and Mr. Powell after which the same decision to offer alternative school for the remainder of the year was reached. The decision stated:
After introductions and purpose of the meeting, Bryan Kirkland White stated that he and three (3) friends left campus on November 29, 2000 from third period band and went to a trailer home in South Bossier. Bryan stated that marijuana was purchased, he and his friends went to a storage shed on the same property and smoked from a pipe. Bryan stated that he knew the substance was marijuana. He further stated that he and his friends returned to Parkway High School for the last class period of the day, where Mr. Saucier (assistant principal) saw them coming from the parking lot. Bryan also stated he had used marijuana before.
The parents appealed the decision to the BPSB. The record contains December 11, 2000 letters to the parents informing them of the December 14, 2000 hearing. On December 15, 2000 the assistant superintendent informed the parents by letters that the Administrative Committee of the BPSB voted unanimously to uphold the recommendation of placement of Bryan and Cedric at the alternative school.
The parents sought judicial review of that decision and injunctive relief from the district court. The students contended that their expulsion was not supported by substantial and rational evidence because there was no evidence that the students had any controlled dangerous substance. They also alleged that they suffered irreparable injury by being removed from the college prep classes at Parkway, deprived of that learning experience and subjected to embarrassment and humiliation. The *62 district court on December 22, 2000, issued a TRO directing the BPSB to readmit the boys to Parkway. A hearing was set for January 4, 2001. BPSB filed a motion to dissolve the TRO. The matter was continued with the TRO in effect until January 18 when a hearing was conducted in the trial court.
The trial court February 1, 2001 judgment rescinded and dismissed the TRO and denied the plaintiffs' requests for injunctive relief. These appeals were filed and granted the same day.

REASONS FOR JUDGMENT
The trial court stated the applicable statute was La. R.S. 17:416(A)(3)(a)(vi).
(A)(3)(a) A school principal may suspend from school or suspend from riding on any school bus any pupil who:
(vi) Uses tobacco or who possesses alcoholic beverages or any controlled dangerous substance governed by the Uniform Controlled Dangerous Substances Law, in any form, in school buildings, on school grounds, or on school buses owned by, contracted to, or jointly owned by any city or parish school board.
The trial court found there was clear and convincing evidence (based upon school officials' statements and the boys' admissions) that the boys used a CDS. The most relevant fact was that the students returned to school while under the influence of a CDS. The trial judge reasoned that the intent of La. R.S. 17:416(A)(3)(a)(vi) covered the behavior of these students and that, although the CDS was not used on campus, its use still had an impact on the user when he returned to the school.
Noting the BPSB's duty is to protect its students from anything that impedes the learning process, the trial court observed that a student under the influence of a CDS on campus definitely impairs his own learning ability and that of other students. A common sense interpretation of 17:416 (which does not specifically address the off campus use of alcohol or CDS), according to the trial court, is that the statute would apply where there was clear and convincing evidence that a student was present on campus under the influence of a CDS. Finding there was substantial and rational evidence to support the expulsions, the trial court held that the parents and students were given notice of the complaint and an opportunity to respond on numerous occasions. Therefore, the trial court concluded that due process requirements and compliance with the law were satisfied.

LAW
In pertinent part, La. R.S. 17:416 provides:
A. (1)(a) Every teacher shall endeavor to hold every pupil to a strict accountability for any disorderly conduct in school or on the playgrounds of the school, on the street or road while going to or returning from school, or during intermission or recess.
. . .
A.(3)(a) A school principal may suspend from school or suspend from riding on any school bus any pupil who:
(i) Is guilty of willful disobedience.
(ii) Treats a teacher, principal, superintendent, member, or employee of the local school board with intentional disrespect.
(iii) Makes against any one of them an unfounded charge.
(iv) Uses unchaste or profane language.

*63 (v) Is guilty of immoral or vicious practices, or of conduct or habits injurious to his associates.
(vi) Uses tobacco or who possesses alcoholic beverages or any controlled dangerous substance governed by the Uniform Controlled Dangerous Substances Law, in any form, in school buildings, on school grounds, or on school buses owned by, contracted to, or jointly owned by any city or parish school board.
(vii) Disturbs the school and habitually violates any rule.
(viii) Cuts, defaces, or injures any part of public school buildings, any property belonging to the buildings, or any school buses owned by, contracted to, or jointly owned by any city or parish school board.
(ix) Writes any profane or obscene language or draws obscene pictures in or on any school material or on any public school premises, or on any fence, pole, sidewalk, or building on the way to or from school, or on any school bus, including those owned by, contracted to, or jointly owned by any city or parish school board.
(x) Is found carrying firearms, knives, or other implements which can be used as weapons, the careless use of which might inflict harm or injury.
(xi) Throws missiles liable to injure other persons on the school grounds or while on any school bus, including those owned by, contracted to, or jointly owned by any city or parish school board.
(xii) Instigates or participates in fights while under school supervision.
(xiii) Violates traffic and safety regulations.
(xiv) Leaves the school premises without permission.
(xv) Leaves his classroom during class hours or detention without permission.
(xvi) Is habitually tardy or absent.
(xvii) Commits any other serious offense.
(b)(i) Prior to any suspension, the school principal, or his designee, shall advise the pupil in question of the particular misconduct of which he is accused as well as the basis for such accusation, and the pupil shall be given an opportunity at that time to explain his version of the facts to the school principal or his designee. In each case of suspension or expulsion the school principal, or his designee, shall contact by telephone at the telephone number shown on the pupil's registration card or send a certified letter at the address shown on the pupil's registration card to the parent, tutor, or legal guardian of the pupil in question giving notice of the suspension or expulsion, the reasons therefor and establishing a date and time for a conference with the principal or his designee as a requirement for readmitting the pupil provided that in the case of expulsion, the contact with the parent or guardian shall include a certified letter. If the parent, tutor, or legal guardian fails to attend the required conference within five school days of mailing the certified letter or other contact with the parent, the truancy laws shall become effective. On not more than one occasion each school year when the parent, tutor, or legal guardian refuses to respond, the principal may determine whether readmitting the pupil is in the best interest of the student. On any subsequent occasions in the same year, the pupil shall not be readmitted unless the parent, tutor, legal guardian, court, or other appointed representative responds. A pupil whose presence in or about a school poses a continued danger *64 to any person or property or an ongoing threat of disruption to the academic process shall be immediately removed from the school premises without the benefit of the procedure described hereinabove; however, the necessary procedure shall follow as soon as is practicable.
. . .
(c) Any parent, tutor or legal guardian of a pupil suspended shall have the right to appeal to the city or parish superintendent of schools or his designee, who shall conduct a hearing on the merits. The decision of the superintendent of schools on the merits of the case, as well as the term of suspension, shall be final, reserving to the superintendent of schools the right to remit any portion of the time of suspension.
. . .
B.(1)(a) Any student after being suspended for committing any of the offenses enumerated in this Section may be expelled, upon recommendation by the principal of the public school in which said student is enrolled, which recommended expulsion shall be subject to the provisions of Subsection C.
(b) Notwithstanding the provisions of Subsection A, the principal shall immediately suspend a student who is found carrying or possessing a firearm, a knife the blade of which equals or exceeds two inches in length, or another dangerous instrumentality, or who possesses, distributes, sells, gives, or loans any controlled dangerous substance governed by the Uniform Controlled Dangerous Substances Law, in any form. He shall immediately recommend the student's expulsion in accordance with Subsection C, except that, in the case of a student in kindergarten through grade five who is found carrying or possessing a knife as described in this Section, the principal may, but shall not be required to, recommend the student's expulsion in accordance with Subsection C.
. . .
C. (1) Upon the recommendation by a principal for the expulsion of any student as authorized by Subsection B hereof, a hearing shall be conducted by the superintendent or by any other person designated so to do by the superintendent to determine the facts of the case and make a finding of whether or not the student is guilty of conduct warranting a recommendation of expulsion. Upon the conclusion of the hearing and upon a finding that the student is guilty of conduct warranting expulsion, the superintendent, or his designate, shall determine whether such student shall be expelled from the school system or if other corrective or disciplinary action shall be taken. At said hearing the principal and/or teacher concerned may be represented by any person appointed by the superintendent. The concerned teacher shall be permitted to attend such hearing and shall be permitted to present information the teacher believes relevant. Until such hearing takes place the student shall remain suspended from the school. At such hearing the student may be represented by any person of his choice.
(2)(a)(ii) Notwithstanding the provisions of R.S. 17:416(B), any student, sixteen years of age or older, found guilty of possession of, or knowledge of and intentional distribution of or possession with intent to distribute any illegal narcotic, drug, or other controlled substance on school property, on a school bus, or at a school event pursuant to a hearing as provided for by R.S. 17:416(C)(1) shall be expelled from school for a minimum of twenty-four calendar months.
. . .

*65 (d)(i) Any student expelled from school pursuant to the provisions of R.S. 17:416(C)(2)(a), (b) or (c) may be readmitted on a probationary basis to school at any time during the specified period of expulsion on such terms and conditions as may be stipulated by the city or parish school board and agreed to in writing by the student and by the student's parent or other person responsible for the student's school attendance. Such terms and conditions may include but need not be limited to placing the student in a suitable alternative education program as determined by the school board. However, any such written agreement shall include a provision that upon the school principal or superintendent of schools making a determination that the student has violated any term or condition agreed to, the student shall be immediately removed from the school premises without the benefit of any hearing or other procedure applicable to student suspensions and expulsions. As soon thereafter as possible, the principal or his designee shall provide verbal notice to the superintendent of schools of any such determination and also shall attempt to provide such verbal notice to the student's parent or other person responsible for the student's school attendance. The principal or his designee also shall provide written notice of the determination and the reasons therefor to the superintendent and to the student's parent or other responsible person.
. . .
(4) The parent or tutor of the pupil may, within five days after the decision is rendered, request the city or parish school board to review the findings of the superintendent or his designee at a time set by the school board; otherwise the decision of the superintendent shall be final. If requested, as herein provided, and after reviewing the findings of the superintendent or his designee, the school board may affirm, modify, or reverse the action previously taken.
(5) The parent or tutor of the pupil may, within ten days, appeal to the district court for the parish in which the student's school is located an adverse ruling of the school board in upholding the action of the superintendent or his designee. The court may reverse or revise the ruling of the school board upon a finding that the ruling of the board was based on an absence of any relevant evidence in support thereof.

DISCUSSION
The legislature provided for student discipline in the public schools in La. R.S. 17:416 which covers all types of penalties from oral reprimands to expulsion. La. 17:416(A)(3)(a) set out the conduct that may result in suspension of a student. A student suspended for violation of any of the enumerated offenses in 17:416(A) also may be expelled upon recommendation of the principal of the public school at which the student is enrolled. La. R.S. 17:416(B)(1)(a). However, a student possessing a CDS must be suspended immediately and the principal must immediately recommend expulsion. La. R.S. 17:416(B)(1)(b). When the principal recommends expulsion, a hearing by the superintendent or his designee is mandatory. At that time a determination to expel or take some other disciplinary action is made. The parents may thereafter appeal to the school board to review the action. If the parent is dissatisfied with the school board's ruling, the law provides an appeal to the district court. La. R.S. 17:416(C).
In Williams v. Turner, 382 So.2d 1040 (La.App. 2d Cir.1980), this court held that La. 17:416 affords due process procedurally and is not unconstitutional. In Bonner *66 v. Lincoln Parish School Bd., 28,993 (La. App.2d Cir.12/11/96), 685 So.2d 432, this court cited the "fountainhead case on student discipline," Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) which simply requires an informal give and take between the student and the administrative body dismissing him that will provide the student the opportunity to characterize his conduct and put it in what he deems the proper context.
Since the time of the ruling in Goss, the legislature has provided that all school boards should work toward the establishment of "alternative schools for children whose behavior is disruptive." La. R.S. 17:100.5. BPSB has established an alternative school, and the expulsions in this case in accordance with La. R.S. 17:100.5 and 17:416(A)(2)(c) were made with an assignment to the alternative school. Because this is not an expulsion in the traditional sense causing total deprivation of education, the U.S. Fifth Circuit Court of Appeals has indicated that no protected property interest is implicated for purposes of due process analysis in a school's expulsion and assignment of a student to an alternative school. Nevares v. San Marcos Consolidated Independent School District, 111 F.3d 25 (5th Cir.1997). Nevertheless, despite the diminishment of a protected property interest, the Goss ruling also recognized that due process forbids arbitrary deprivation of liberty. The punishment imposed which may harm a student's good name and reputation may not be imposed without minimal requirements of due process being satisfied. Goss, supra at 95 S.Ct. 736.
In Labrosse v. St. Bernard Parish School Bd., 483 So.2d 1253 (La. App. 4th Cir.1986), the court explained that the school board's actions are entitled to a presumption of regularity and validity. However, the reviewing court has the ultimate duty to determine whether the board's findings are supported by sufficient evidence. The standard for review is to make a determination whether (1) the hearing was conducted in accordance with the law; (2) the factual findings were supported by substantial evidence; and (3) the board's conclusion from these factual findings was arbitrary or constituted an abuse of its discretion. The reviewing court must decide whether the administrative body had a rational basis for its discretionary determinations and whether these determinations were supported by substantial evidence insofar as factually required. Only in the absence of such a rational basis does the reviewing court have a right to substitute its judgment for that of the administrative body.
At the outset, we observe that the appellate record in this case is limited to the pleadings filed and the forms placed into evidence by the BPSB at the hearing at the district court. No testimony was taken in the trial court. An appellate court renders its judgment upon the record on appeal. La. C.C.P. art. 2164. The record on appeal is that which is sent by the trial court to the appellate court and includes the pleadings, court minutes, transcript, judgments and other rulings, unless otherwise designated. La. C.C.P. arts. 2127 and 2128. An appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence. Unless accepted into evidence by the trial court, the briefs of the parties and the attachments thereto are not part of the record on appeal. Robbins v. State ex rel. Dept. of Labor, 31590 (La.App.2d Cir.2/24/99), 728 So.2d 991. Further, no matter how eloquent, argument of counsel is not evidence. Taylor v. Tulane Medical Center, 98-1967(La.App. 4th Cir.11/24/99), 751 So.2d 949.
*67 Although we find that some of the forms completed by school and school board officials contain errors, we find that the procedure applied by the BPSB did afford the students clear notice of their acts of misconduct and the opportunity to be heard. Nevertheless, appellants argue that the proceedings were flawed because of the charge of possession of CDS under La. R.S. 17:416(A)(3)(a)(vi) which was never proven. They cite Labrosse v. St. Bernard Parish School, supra, and its holding that possession of CDS must occur on school property. In this case, neither McCall or White returned to Parkway in possession of marijuana, and appellants argue that the fact that the drug would have remained in their systems after their smoking venture does not amount to the specific charge provided in the legislation.
While we agree with Appellants' argument that possession of CDS on campus under La. R.S. 17:416(A)(3)(a)(vi) did not occur, we do not agree that a disciplinary violation punishable by suspension or expulsion did not occur. Under La. R.S. 17:416(A)(3)(a)(xiv) and (xvii), the students may also be disciplined for leaving the school premises without permission and for "any other serious offense." Appellants were guilty of violating both of these provisions for their unauthorized leaving of the campus to smoke the marijuana and their return to the campus when their impairment by the CDS could have disrupted the education environment.
Despite the technical error by BPSB in charging appellants with possession of CDS, we do not find that such procedure in any way prevented appellants from understanding the nature of the charges against them. In fact, both students have consistently (and admirably) admitted to the serious mistakes which they made. With due process considerations at a minimum in this expulsion setting where assignment to an alternative school is the punishment, we find that BPSB properly determined that a disciplinary violation subject to suspension and expulsion occurred.
While we reject appellants' argument that serious disciplinary violations did not occur and that BPSB's charging them with possession of CDS was fatal to BPSB's right to discipline in this case, we never-theless must vacate the expulsions by BPSB in this case because of the confusion in the record created by the mandatory expulsion provision of La. R.S. 17:416(C)(2)(a)(ii). As quoted above, La. R.S. 17:416(C)(2)(a)(ii) requires mandatory expulsion for students found to be in possession of CDS. For most other instances of misconduct enumerated in the statute, La. R.S. 17:416(C)(1) allows the superintendent, or his designate, discretionary power to "determine whether such student shall be expelled from the school system or if other corrective or disciplinary action shall be taken." On the record before us we must assume that, beginning with the recommendation of the principal through the final vote of the school board, BPSB proceeded with the understanding that a mandatory expulsion was required for the appellants' actions which were erroneously viewed as amounting to possession of CDS. The appellants' opportunity to seek a lesser punishment and to appeal to the discretion of the superintendent must be assumed to have been denied and therefore requires a remand to BPSB.
While we recognize that expulsion with assignment to the alternative school remains a possible punishment for disruptions caused by this type of event involving drug use off campus, the school officials' discretion in administering punishment may not be arbitrary and abusive and therefore should take into account any prior disciplinary problems (or lack of same) *68 of the student and the actual disruption to the educational environment which resulted from the student's drug use. As indicated by our highest court in Goss, due process protects against arbitrary deprivations of liberty. Accordingly, we vacate the action of BPSB and remand the case for further proceedings by BPSB, if any, in accordance with this opinion. Cedric McCall and Bryan White are to be readmitted to Parkway High School pending further proceedings, if any.
VACATED AND REMANDED.
NORRIS, C.J., concurs in part and dissents in part with written reasons.
NORRIS, C.J., concurring in part and dissenting in part.
I respectfully concur in the majority opinion insofar as it vacates the action of the Bossier Parish School Board. I dissent from a remand for further proceedings.
These students received notice that they were accused of unacceptable behavior delineated in R.S. 17:416 A(3)(a)(vi), which prohibits the use of any controlled dangerous substances in school buildings, on school grounds, or on school buses. If found guilty of this conduct, the mandated discipline is expulsion. R.S. 17:416 C(2)(a)(i). At all stages of the proceedings provided by the statute, they were found guilty, expelled and transferred to an alternative school.
The record clearly shows the students were not guilty of the conduct with which they were charged and noticed. The district court recognized the evidence failed to show these students used marijuana on campus, but despite the clear and unambiguous language of the subsection interpreted it to encompass clear and convincing evidence that a student is present on campus under the influence of a controlled dangerous substance. The district court upheld the expulsion. This was a plainly wrong interpretation of the statute. See, Labrosse v. St. Bernard Parish School Board, 483 So.2d 1253 (La.App. 4th Cir. 1986).
The majority opinion goes even further. While conceding that the evidence does not support the specific conduct charged, the majority performs an ex post facto search of the statute to find other enumerated categories of conduct that could have been charged but which only support discretionary discipline, including expulsion. On this basis, the majority vacates the action of the school board but remands to allow the board to find guilt on one of these charges and then reconsider the discipline. I disagree with this part of the resolution, as well as the majority's suggestion, based on Nevares v. San Marcos Consol. Indep. School Dist., 111 F.3d 25 (5th Cir.1997), that since the students were "reassigned" rather than expelled, their due process rights were not implicated. Nevares, supra, is distinguishable on its facts and not applicable because R.S. 17:416 specifically provides for due process procedures.
While I certainly disapprove of these students' conduct in leaving campus, smoking marijuana, and returning, I cannot share the majority's lack of concern for the disregard of statutory due process in this case. I concur in vacating the school board's action against these students, but I dissent from a remand for further proceedings. The concept of double jeopardy looms heavy over such a resolution. Because of the fatally flawed procedure utilized, I would vacate the judgment and reinstate the students at Parkway High School.
NOTES
[1] An expulsion includes the removal of the student from all regular school settings for a period of not less than one school semester, during which time the school board shall place the pupil in an alternative school. La. R.S. 17:416(A)(2)(c).