Judgment rendered August 28, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,874-WCA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

THOMAS SOUTHERN                                    Plaintiff-Appellee

versus

SERVPRO D E INVESTMENTS                            Defendants-Appellants
AND LWCC

* * * * *

Appealed from the
Office of Workers' Compensation, District 1-East
Parish of Ouachita, Louisiana
Trial Court No. 22-01926

Brenza Irving-Jones
Workers' Compensation Judge

* * * * *

PETTIETTE, ARMAND & DUNKELMAN          Counsel for Appellants
By: Robert A. Dunkelman
    C. Cavett Feazel

FORREST, CRESSY & JAMES, LLC           Counsel for Appellee
By: Byron Miller Forrest
    Eric Stephen Hamilton

* * * * *

Before THOMPSON, ROBINSON, and ELLENDER, JJ.

**ELLENDER, J.**

Servpro DE Investments and its insurer, LWCC, appeal two rulings of the Workers' Compensation Judge ("WCJ"). The first, an order after an expedited hearing, granted the claimant, Thomas Southern's, motion to change physicians. The second, a judgment after a full hearing, denied Servpro's claim of forfeiture of benefits. For the reasons expressed, we reverse in part, affirm in part, and remand.

## FACTUAL BACKGROUND

Southern was employed as a crew chief at Servpro, a fire- and water-damage restoration company, at its Monroe location. He made $730.80 a week. On February 12, 2019, he was at a job in Sterlington, La., when he stepped on a wooden pallet that broke underfoot, causing him to twist his back. On LWCC's referral, he went that day to Dr. Thomas Dansby, a family practitioner in Monroe, who placed him on physical therapy ("PT"). Southern continued on the job, on light-duty status, for the next 2½ years, but felt he was not getting full results from PT, so Dr. Dansby referred him to Dr. Doug Brown, an orthopedic surgeon in Monroe. Southern started seeing Dr. Brown in May and signed a choice-of-physician form for him on August 15, 2019.

Dr. Brown took MRIs and diagnosed lumbar spondylosis, herniated discs at L3-4, L4-5, and L5-S1, an annular fissure, and bilateral lower extremity neuropathy. He prescribed more PT, steroid injections, radiofrequency ablations, and medial nerve blocks to alleviate the pain, but never recommended surgery. He advised that Southern could continue to work, on light-duty status. Southern still felt he was not making progress from this course of treatment, so Dr. Brown referred him to Dr. Marshall

Cain, a neurosurgeon in Monroe. Southern signed a choice-of-physician form for Dr. Cain on April 19, 2020, and saw him twice, in April and June.

Dr. Cain diagnosed lumbar stenosis and degenerative disc disease but found no focal deficits and advised that surgery was not warranted. Like Dr. Brown, Dr. Cain reported that Southern could continue to work, on light-duty status.

In December 2020, Dr. Brown reaffirmed that Southern was not a surgical candidate and, after two functional capacity exams, advised Servpro in March 2021 that he could continue to work light-duty. However, because of Southern's continued complaints, in June 2021 Dr. Brown referred him to Dr. Jeffrey Counts, an orthopedic surgeon in West Monroe, for a "second opinion." Servpro approved this referral on July 27, 2021.

Two days later, July 29, Servpro terminated Southern from his job because of complaints of bullying his subordinates and name-calling. (Southern has disputed these claims.) Shortly after this, Southern retained counsel, from New Orleans. On August 5, 2021, counsel sent a letter of representation to Servpro's adjuster, Ms. Perkins, with a request to approve Southern's new choice of physician, Dr. Joseph Zavatsky, an orthopedic spine surgeon in Metairie, La.

The communications between counsel and Perkins were somewhat intricate. In an email of August 9, she told counsel that Servpro would not approve the change of physician because LWCC allows only "one doctor per specialty," and Southern had already selected Dr. Brown; he also had a pending request for Dr. Counts. On September 13, counsel responded that Southern needed the change because Dr. Brown had stopped performing surgery. However, Perkins stated in deposition that she called Dr. Brown's

2

office on September 15 and was told, to the contrary, that he was in fact still performing surgery. Counsel emailed her on September 16, again asserting that Dr. Brown had quit doing surgery. Perkins emailed in response that she needed confirmation of this fact; according to Servpro's claim file, no such confirmation was ever received. Perkins made a note in the claim file, on September 22, that her office discussed the request for Dr. Zavatsky, and LWCC preferred to approve Dr. Counts, so LWCC "won't have to pay for travel and hotel stay * * * 3 to 4 hours away from his home."

Nevertheless, on September 27, counsel emailed Perkins that Southern had agreed to see Dr. Counts, and on September 28 he executed a choice-of-physician form for Dr. Counts as his new orthopedic surgeon. He went to Dr. Counts for an examination in October 2021. Dr. Counts reviewed the MRIs, listened to Southern's complaints, recommended a functional capacity exam, and advised that he had reached maximum medical improvement.

Dissatisfied with all his medical opinions, Southern independently went to Metairie to see Dr. Zavatsky in January 2022. Dr. Zavatsky felt he would be a good candidate for surgery: he would start with diagnostic L5-S1 epidural steroid injections and, if these improved Southern's condition, he would recommend surgery. Dr. Zavatsky submitted a request for approval of those injections; Servpro denied this in early February 2022.

### PROCEDURAL HISTORY

Southern filed this disputed claim for compensation benefits on April 8, 2022. He alleged, inaccurately, that no benefits had yet been paid; he also demanded treatment with Dr. Zavatsky, plus penalties and attorney fees for Servpro's refusal to authorize this treatment. On June 6, he filed a motion

3

for expedited hearing on his request for a new choice of physician. In support, he attached Dr. Brown's medical records and Dr. Zavatsky's report.

At a hearing on June 27, 2022, Servpro argued that expedited process was allowed only for an *initial* choice of physician, La. R.S. 23:1121 (B)(1) and 23:1201 (K)(1)(a); since Servpro had already approved three choices of physician, the hearing was improper. Counsel for Southern conceded that discovery was still pending, so the WCJ continued the matter.

The next day, June 28, 2022, Servpro filed an amended answer asserting forfeiture for fraud, La. R.S. 23:1208. This alleged that when he went to Metairie, Southern told Dr. Zavatsky that he had been fired from Servpro because of his work restrictions, when in fact he was fired for bullying his subordinates.

At the next hearing, on October 24, 2022, Servpro again argued that expedited process was improper, but the WCJ stated that after the passage of three months, the matter was no longer "expedited." The parties offered no evidence but argued from the existing record. Counsel argued that every doctor Southern had seen was on Servpro's recommendation, he now needed his own choice, and Servpro told him it was "unreasonable" to go out of northeast Louisiana to see a doctor. Servpro responded that no doctor had ever recommended surgery, and Southern's going to Dr. Zavatsky was just "doctor shopping."

In an oral ruling, the WCJ found that sending Southern to Dr. Counts was *the employer's choice*, not the employee's; a change was needed because Dr. Brown no longer performed surgery; and it was wrong to deny the employee's choice simply because of travel and mileage. The WCJ

4

signed an order granting the new choice of physician, Dr. Zavatsky, and ruling on other motions not germane to this appeal.

The matter came to trial in May 2023, on Southern's request for penalties and attorney fees regarding the choice of Dr. Zavatsky and on Servpro's defense of fraud. No live witnesses testified, but the parties offered a full complement of medical records, claim files, and other exhibits, and submitted the case on briefs.

## ACTION OF THE WCJ

In July 2023, the WCJ delivered oral reasons for judgment. After restating the facts, she found Servpro "ultimately" denied the change of physician because of mileage, "but also" because Southern had previously selected Drs. Brown and Cain, and Servpro had "already" approved a change to Dr. Counts. She also found that Dr. Brown's cessation of surgical practice created the necessity for a change of physician, satisfying R.S. 23:1121; once this happened, Southern was entitled to choose Dr. Zavatsky. However, he "surrendered" this right once he signed the choice-of-physician form for Dr. Counts; this meant Servpro's refusal to approve the change was not arbitrary and capricious. Hence, penalties and attorney fees were denied.

The WCJ further found that Southern admitted telling Dr. Zavatsky that Servpro terminated him because of his work restrictions, even though Servpro's HR department had advised him it was for bullying. She nevertheless found not enough evidence that Southern "did not feel" he was terminated for work restrictions, so the misrepresentation was not intentional, and forfeiture was not warranted.

5

The WCJ later rendered judgment denying Southern's request for penalties and attorney fees and denying Servpro's claim of forfeiture for § 1208 fraud.

Servpro suspensively appealed all issues arising from the judgment.

## DISCUSSION

### *Change of Physician*

By its first assignment, Servpro urges the WCJ erred in ordering a change of physician, at an unauthorized expedited motion hearing, to Dr. Zavatsky without receiving any evidence of medical necessity for the change. Its second assignment urges the WCJ erred in not rescinding this order after reviewing the evidence and holding that Southern was not entitled to a change of physician to Dr. Zavatsky.

It argues that the fundamental requirement for a change of physician is that the claimant must "show that a choice of a new treating physician is medically necessary," and R.S. 23:1121 (B)(1) does not "invest claimant with the right to multiple treating physicians." *Cheatham v. Luberski Inc.*, 43,603 (La. App. 2 Cir. 9/17/08), 996 So. 2d 373; *Moore v. Kellie's Sitting Servs. Inc.*, 20-391 (La. App. 3 Cir. 12/16/20), 310 So. 3d 698. At the expedited hearing, Servpro shows, Southern offered no evidence whatsoever, and, hence, no evidence of medical necessity for the change. Servpro also submits that it properly advised Southern that it would approve only one doctor per specialty; whether Dr. Brown was still performing surgery was irrelevant, as no doctor had ever suggested surgery as an option; the issue of mileage was irrelevant, as Southern never met his burden of proof for a change of physician. Further, days after Servpro denied the request for a change of physician to Dr. Zavatsky, Southern signed a change-

of-physician form for Dr. Counts; this was a compromise and waived the claim. *Trahan v. Coca Cola Bottling Co. United*, 04-0100 (La. 3/2/05), 894 So. 2d 1096; *Precept Credit Opportunities Fund LP v. Walker*, 21-0670 (La. App. 4 Cir. 6/22/22), 343 So. 3d 299.

Servpro also argues it was inconsistent for the WCJ to find, after trial and receipt of evidence, that Southern "surrendered" his right to choose Dr. Zavatsky, but then to allow her prior order to stand, approving that choice. Servpro submits the WCJ was right the second time and should have vacated her prior order.

Southern responds that each of the WCJ's findings is well supported by the record. Although R.S. 23:1121 (B)(1) limits the claimant to one physician in each field, the "unavailability" of the first chosen physician equates to a necessity for a new one, *Dubuisson v. Amclyde Eng. Prods. Co.*, 12-0010 (La. App. 1 Cir. 12/31/12), 112 So. 3d 891; *Wilzcewski v. Brookshire Grocery Co.*, 10-1148 (La. App. 3 Cir. 3/16/11), 59 So. 3d 530. Once Dr. Brown quit performing surgery, he became unavailable, and this was all the proof needed for the change. He reiterates that every doctor he saw was at Servpro's recommendation, so his choice of Dr. Counts, in late September 2021, cannot be considered a compromise of his claim.

Medical examination of an injured employee is regulated by La. R.S. 23:1121. The provision pertinent to this case states:

> B. (1) The employee shall have the right to select one treating physician in any field or specialty. * * * After his initial choice the employee shall obtain prior consent from the employer or his workers' compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for a change to a treating physician in another field or specialty.

7

This statute gives an injured employee an absolute right to select one physician in any field without the approval of the employer. *Smith v. S. Holding Inc.*, 02-1071 (La. 1/28/03), 839 So. 2d 5. However, the statute does not invest the claimant with the right to multiple treating physicians. *Cheatham v. Luberski Inc.*, *supra*; *Thompson v. The Animal Hosp.*, 39-154 (La. App. 2 Cir. 12/15/04), 889 So. 2d 1193. To obtain a change of physician, the claimant must show that the choice of a new treating physician is medically necessary. *Cheatham v. Luberski*, *supra*; *Reed v. St. Francis Med. Ctr.*, 44,211 (La. App. 2 Cir. 4/8/09), 8 So. 3d 824; *Wilson v. Metropolitan Dev. Ctr.*, 12-487 (La. App. 5 Cir. 3/13/13), 113 So. 3d 261. The fact that the current physician released the claimant to return to work does not create medical necessity for a new choice of physician. *Cheatham v. Luberski*, *supra*. Displeasure with the first choice of physician likewise does not create medical necessity for a new choice of physician. *Reed v. St. Francis*, *supra*; *Moore v. Kellie's Sitting Servs.*, *supra*. The statute does not permit "doctor shopping." *Reed v. St. Francis*, *supra*; *Moore v. Kellie's Sitting Servs.*, *supra*.

Oral arguments of counsel are not evidence. *Council of City of New Orleans v. Washington*, 09-1067 (La. 5/29/09), 9 So. 3d 854; *McCall v. Bossier Parish Sch. Bd.*, 34,983 (La. App. 2 Cir. 3/16/01), 785 So. 2d 57, 154 Ed. L. Rep. 995.

We have reviewed the record and are constrained to agree that Southern offered no evidence at the hearing on his motion to change physicians. Neither the transcript, the minutes, nor the exhibit list shows that anything was filed into evidence at this hearing. On this basis alone, it is impossible to affirm the WCJ's order granting the change of physician.

The only items already in the record were Dr. Brown's patient notes and hospital records, which never recommended surgery, and Dr. Zavatsky's report, which suggested epidural steroid injections with the proviso that if they bring relief, "I feel he will be a candidate for surgery." Notably, Dr. Brown had already administered several rounds of these injections with enough success to continue Southern on light-duty work. These exhibits prove only displeasure with the selected physicians and some level of doctor shopping. It does not prove a medical necessity. *Reed v. St. Francis*, *supra*; *Moore v. Kellie's Sitting Servs.*, *supra*.

We firmly reject counsel's representation, at oral argument, that the "testimony" of the attorneys constituted evidence. The attorneys were not sworn and did not testify. They merely argued, and argument is not evidence. *Council of City of New Orleans v. Washington*, *supra*; *McCall v. Bossier Parish Sch. Bd.*, *supra*. At the hearing, counsel argued that Dr. Brown had stopped performing surgery, and this proved his unavailability. However, counsel offered no proof of this, and Servpro disputed it. In short, there was absolutely no basis for the WCJ to find "unavailability." Counsel also cited Exhibit D-9, Dr. Counts's medical records, but this was not filed until the subsequent hearing, on May 4, 2023, and obviously could not inform the WCJ's ruling of November 2, 2022.

We finally note that, after that hearing in May 2023, and after the receipt of evidence, the WCJ ultimately decided that Southern was not entitled to change his physician. With this considered decree, the error of the earlier order is obvious.

These assignments of error have merit. The WCJ's order granting the change of physician is reversed.

9

*Forfeiture*

By its third assignment of error, Servpro urges the court erred in failing to find Southern violated R.S. 23:1208 when he falsely told Dr. Zavatsky that he had been terminated due to work restrictions, when he later admitted knowing it was for workplace bullying. The only requirements for forfeiture are (1) a false statement or representation, (2) it is willingly made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment, *Resweber v. Haroil Const. Co.*, 94-2708 (La. 9/5/95), 660 So. 2d 7. Servpro quotes the applicable portions of Southern's deposition, in which he admitted that Servpro had always accommodated his work status, and argues the falsehood was an attempt to override his for-cause dismissal and get Dr. Zavatsky to place him on temporary total disability.

Southern responds that forfeiture is subject to strict construction, *Daniels v. Hemphill Const. Co.*, 45,946 (La. App. 2 Cir. 1/26/11), 57 So. 3d 428. He contends that certain things do not lead to forfeiture, such as inadvertent or inconsequential false statements, *Jenson v. Berry Global Group Inc.*, 55,231 (La. App. 2 Cir. 8/9/23), 369 So. 3d 469; statements resulting from imperfect memory, *Shelton v. Smitty's Supp. Inc.*, 17-1419 (La. App. 1 Cir. 6/12/18), 253 So. 3d 157, *writs denied*, 18-1195, -1199 (La. 11/14/18), 256 So. 3d 258, 291; or mere inconsistencies, *Brien v. Leon Angel Constructors Inc.*, 42,904 (La. App. 2 Cir. 3/12/08), 978 So. 2d 576, *writ denied*, 08-0802 (La. 6/6/08), 983 So. 2d 919. He submits the WCJ did not abuse her discretion in finding that he merely conveyed his subjective impression of his job situation and honestly thought the job restrictions were what led to his firing.

It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit under the Workers' Compensation Act, either for himself or for any other person, to willfully make a false statement or representation. La. R.S. 23:1208 (A). Forfeiture is authorized upon proof that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment. *Resweber v. Haroil Const. Co.*, *supra*; *Jenson v. Berry Global Group Inc.*, *supra*. Forfeiture is a harsh remedy and must be strictly construed. *Wise v. J.E. Merit Constructors Inc.*, 97-0684 (La. 1/21/98), 707 So. 2d 1214; *Jenson v. Berry Global Group*, *supra*. The statute does not penalize any false statement, but only those willfully made for the purpose of obtaining or defeating benefits. *Resweber v. Haroil Const.*, *supra*. An inadvertent and inconsequential false statement will not result in the forfeiture of benefits. *Wise v. J.E. Merit*, *supra*; *Jenson v. Berry Global Group*, *supra*. The WCJ's finding or denial of forfeiture will not be disturbed on appeal absent manifest error. *Resweber v. Haroil Const.*, *supra*; *Jenson v. Berry Global Group*, *supra*.

The WCJ found, somewhat obliquely, the evidence was "insufficient to conclude that [Southern] did not feel he was terminated due to his work restrictions." This court does not agree that the claimant's subjective beliefs or "feelings" will override the falsity of his statement; such a rationale would eviscerate the intent of the statute. Standing alone, Southern's "feeling" that he was terminated because of work restrictions despite the objective fact that he was terminated for other reasons will not avoid the penalty of forfeiture.

11

Nevertheless, on close review and with great deference to the WCJ's factfinding role, this record supports the finding that Southern's statement to Dr. Zavatsky was not made directly for the purpose of obtaining a benefit. Southern had already been receiving medical benefits for over two years, making it unlikely that Dr. Zavatsky's recommendation of potential surgery was based solely on this statement. Moreover, Southern did not misrepresent the facts of his injury or treatment, only the details of his current employment status, so the statement can be viewed as inconsequential or collateral to the issue of obtaining benefits. For these reasons, the WCJ did not abuse her discretion in declining to find forfeiture. *Jenson v. Berry Global Group*, *supra*; *Brien v. Leon Angel Constructors*, *supra*. Still, in future proceedings, counsel and the WCJ are advised to take Southern's testimony with a measure of caution.

This assignment of error lacks merit.

## CONCLUSION

For the reasons expressed, the judgment is reversed insofar as it approved Southern's change of physician to Dr. Zavatsky. It is affirmed insofar as it denied Servpro's request for forfeiture of benefits under R.S. 23:1208. The case is remanded for further proceedings, with appellate costs assessed 50% to Thomas Southern and 50% to Servpro DE Investments and LWCC.

**REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.**