877 So.2d 183 (2004)
Samuel Lee ALBERT, Plaintiff-Appellant,
v.
TRANS MET, INC., Defendant-Appellee.
No. 38,261-WCA.
Court of Appeal of Louisiana, Second Circuit.
June 23, 2004.
*185 Samuel Lee Albert, In Proper Person, Appellant.
Troy A. Broussard, Lafayette, for Appellee.
Before STEWART, DREW and HARRISON (Pro Tempore), JJ.
HARRISON, J. (Pro Tempore).
In this workers' compensation case, plaintiff, Samuel Lee Albert, appeals a *186 judgment from the Office of Workers' Compensation, District 1W granting a motion for summary judgment against him and in the favor of the defendant, Trans-Met, Inc., dismissing his claim for medical and disability benefits. For the following reasons, we affirm.

FACTS
The plaintiff was employed by Trans-Met, Inc. as a line-haul driver. His job entailed unloading freight containers from airplanes owned by Airborne Express at a hub in Shreveport, Louisiana. He put the containers onto a truck and delivered them to various destinations. At these destinations, he would unload his truck and pick up other loads. On May 2, 1996, plaintiff sustained an on-the-job injury in Alexandria, Louisiana, while loading his truck. When he reported his injury, plaintiff states that he mainly complained of pain and swelling in his right knee, but he said he also mentioned slight pain in his right shoulder. According to plaintiff, he was instructed to go to St. Francis Cabrini Hospital ("Cabrini"), in Alexandria. There he was diagnosed with a knee strain and given anti-inflammatory medication. He received continued treatment at Cabrini and it was determined that his knee injury was more than a simple strain. In August 1996, plaintiff chose to be treated at the Bone and Joint Clinic, where Dr. William Bundrick, an orthopaedic surgeon, was his treating physician. Plaintiff continued to perform his normal work duties until he underwent arthroscopic surgery on his right knee to repair tears on December 4, 1996. He received workers' compensation benefits and continued medical benefits during his recovery period. Plaintiff states that he received physical therapy and work hardening therapy at Tri-State Physical Therapy ("Tri-State"). This treatment physically prepared him to return to work. During recovery from his knee surgery, plaintiff stated that he was referred by his physical therapist to Dr. Ken Wojcik, a chiropractor, in an effort to help alleviate some of his pain. The plaintiff returned to work without restrictions on April 16, 1997. Plaintiff stated that he still had shoulder complaints and was later examined by Dr. Warren Long, a neurologist. Dr. Long diagnosed him with shoulder spasms. An MRI on his right shoulder revealed micro-tears. On November 11, 1998, plaintiff underwent arthroscopic surgery on his right shoulder to repair the tears. He again received workers' compensation benefits and continued medical benefits. He returned to physical therapy at Tri-State. Plaintiff resumed work in approximately January 1999 with a restriction that he drive only. The record shows that he continued to work in the same position with this restriction until June 2002. At that time, plaintiff was laid off with all the other line-haul drivers, because the company lost its contract with Airborne Express.
On July 24, 2002, plaintiff filed a Disputed Claim for Compensation form with the Office of Workers' Compensation, District 1W. The defendant entered general denials and filed an exception of No Cause of Action. The exception was granted by the workers' compensation judge ("WCJ"). Plaintiff then submitted an amended Disputed Claim of Compensation form on November 1, 2002. In his amended claim, plaintiff alleged that he was denied proper medical treatment for his injuries. He alleged that he was denied supplemental or differential workers' compensation payments from 1999 through June 2002. He further contended that he is unable to work in similar positions due to the injuries he sustained and requested workers' compensation disability payments from June 2002 through the present.
*187 On February 24, 2003 plaintiff's treating physician, Dr. William Bundrick, was deposed. In his deposition, Dr. Bundrick stated that when he initially examined plaintiff in August 1996, he complained of pain in his right knee and right shoulder. He stated that the first time plaintiff made complaints to him regarding his left shoulder was in March 1999. Dr. Bundrick said he was unable to make a causal link between plaintiff's left shoulder complaints and the original accident on May 2, 1996.
On May 22, 2003, the defendant filed a Motion for Summary Judgment. It asserted that the plaintiff has received medical benefits and workers' compensation benefits for injuries to his right knee and right shoulder. The defendant contends that plaintiff is not entitled to the medical benefits he claimed for his left shoulder because it was unrelated to the May 2, 1996 accident. The defendant further asserted that plaintiff was not entitled to disability benefits. It claimed when the plaintiff returned to work, he was offered a work schedule that would allow him to earn 90% or more of his pre-accident wages and he voluntarily elected to work fewer hours. On July 22, 2003 the Office of Workers' Compensation granted defendant's motion and dismissed plaintiff's claims with prejudice. He appeals this judgment.

DISCUSSION
On appeal, plaintiff asserts that the WCJ erred in granting the defendant's Motion for Summary Judgment. He claims that the judge acted without considering all the facts and that key witness testimony that would have assisted him was excluded.
The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine factual dispute. Ouachita National Bank in Monroe v. Gulf States Land and Development, Inc., 579 So.2d 1115 (La.App. 2d Cir.1991); Zadeck v. Arkansas Louisiana Gas Co., 338 So.2d 303 (La.App. 2d Cir.1976); Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991). The motion should be granted if, and only if, the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Jones v. Estate of Santiago, XXXX-XXXX (La.4/14/04), 870 So.2d 1002; Ouachita National Bank, supra. A fact is material if its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Facts are "material" if they potentially insure or preclude recovery, affect the litigants' ultimate success, or determine the outcome of a legal dispute. Jones v. Estate of Santiago, supra.
A plaintiff in a workers' compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. Emilien v. U.R. Construction, XXXX-XXXX (La.App. 4th Cir.10/30/02), 832 So.2d 345; Qualls v. Stone Container Corporation, 29,794 (La.App.2d Cir.9/24/97), 699 So.2d 1137; Bruno v. Harbert International Inc., 593 So.2d 357 (La.1992); Nelson v. Roadway Express, Inc., 588 So.2d 350 (La.1991). Proof by a preponderance of evidence means that the fact or cause sought to be proved is more probable than not. James v. McHenry, 36,098 (La.App.2d Cir.9/18/02), 828 So.2d 94. He must establish *188 a causal link between the work-related accident and his injury. Rhodes v. Terrebonne Parish Sheriff, 2001-2279 (La.App. 1st Cir.6/21/02), 822 So.2d 114; Qualls, supra. If the evidence is evenly balanced or shows only some possibility that a work-related event produced the disability or leaves the question open to speculation or conjecture, then the plaintiff fails to carry the burden of proof. Emilien, supra; Shelton v. Wall, 614 So.2d 828 (La.App. 2d Cir.1993); Williams v. Louisiana Coca-Cola Co., 94-810 (La.App. 5th Cir.3/1/95), 652 So.2d 108.
It is not in dispute that the plaintiff injured his right knee and right shoulder while in the scope of his employment on May 2, 1996. It is also not in dispute that the plaintiff received both workers' compensation and medical benefits for these injuries. The dispute is whether or not plaintiff's left shoulder injury is related to the May 2, 1996 accident.
The records do show that plaintiff complained of left shoulder problems during his work hardening therapy in 1997. However, this was approximately 10 months post-accident. We also note that plaintiff did not complain to Dr. Bundrick about left shoulder pain until March 1999, almost three years post-accident. In order to meet the preponderance burden, the evidence must show sudden objective findings of an injury, rather than mere manifestation of a gradual deterioration or progressive degeneration. Qualls, supra; Jones v. AT & T, 28,059 (La.App.2d Cir.2/28/99), 669 So.2d 696. The record does not show plaintiff had any immediate complaints of left shoulder pain after the May 2, 1996 accident.
The defendant relies on plaintiff's treating physician regarding whether his left shoulder injury was caused by the accident. During Dr. Bundrick's deposition, he was asked:
Q. Okay. Would it be safe to say, Dr. Bundrick, that in your medical opinion the left shoulder injury, though perhaps related to some type of overuse syndrome, is probably not related to his original accident of May 2, 1996?
A. By history you'd have to say that, you know, because we can't definitely peg it to  to one of  that original injury.
Furthermore, when speaking about the causal link between plaintiff's left shoulder injury and the May 2, 1996 accident, Dr. Bundrick stated, "Well, on that you couldn't definitely go back to the original injury because we didn't have a history of it..."
The plaintiff did not offer any medical opinion to support his claim that his left shoulder injury was caused by the May 2, 1996 accident. Also, during his deposition, he admitted that he is unsure if his left shoulder injury occurred during the May 2, 1996 accident. When asked how he believed his left shoulder injury occurred, he stated that it could have occurred during the initial accident, during work hardening therapy, or when he returned to work after his knee surgery. The WCJ reviewed the record, along with supporting exhibits submitted by plaintiff and found summary judgment proper on this claim. We agree.
The plaintiff also claimed disability benefits, including supplemental earnings benefits ("SEB") and temporary total disability benefits ("TTD"). An employee is entitled to receive TTD benefits only if he proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment. Nelson v. City of Grambling, 31,303 (La.App.2d Cir.12/9/98), 722 *189 So.2d 358; Knotts v. Snelling Temporaries, 27,773 (La.App.2d Cir.12/6/95), 665 So.2d 657; Johnson v. Temple-Inland, 95-948 (La.App. 3rd Cir.1/31/96), 670 So.2d 388. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than is nonexistence. Nelson v. City of Grambling, supra; Knotts v. Snelling Temporaries, supra; Johnson v. Temple-Inland, supra.
Since the 1989 amendment to 23:1221(1)(d), maximum medical improvement alone has not been the standard for the termination or eligibility of TTD benefits. Rather, an employee is ineligible for TTD benefits when his physical condition has resolved itself to the point that a "reasonably reliable determination of extent of disability" may be made and "continued, regular treatment by a physician is not required," or six months after the injury, whichever occurs first. Mitchell v. AT & T, 27,290 (La.App.2d Cir.8/28/95), 660 So.2d 204. However, upon reaching maximum medical improvement ("MMI"), an injured worker who is able to return to work, even in pain, is no longer eligible for TTD benefits, but instead is relegated to SEB. Nelson v. City of Grambling, supra; Foster v. Liberty Rice Mill, 96-438 (La.App. 3rd Cir.12/11/96), 690 So.2d 792.
To qualify for SEB, a plaintiff is required to prove by a preponderance of the evidence that a work related injury resulted in the inability to earn 90% or more of the pre-injury wages. LSA-R.S. 23:1221(3)(a); Nelson v. City of Grambling, supra; Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551. The purpose of SEB is to compensate the injured employee for the wage-earning capacity he has lost as a result of his accident. Nelson v. City of Grambling, supra; Banks v. Industrial Roofing & Sheet Metal Works, Inc., supra.
Under LSA-R.S. 23:1221(3)(a), an employer may preclude SEB by establishing that the employee is physically able to perform a certain job and that the job was offered to the employee, or that the job was available to the employee, in his or the employer's community or reasonable geographic region. Nelson v. City of Grambling, supra; Banks v. Industrial Roofing & Sheet Metal Works, Inc., supra. Once the employer demonstrates the employee is capable of work, and appropriate work is available, then the claimant must prove by clear and convincing evidence, unaided by a presumption of disability, that he is unable to perform the employment offered.
The defendant contends that plaintiff is not entitled to disability benefits. The record shows that on October 30, 2000 plaintiff underwent an examination to determine if he was able to perform the essential functions of his job without accommodation. He passed the examination. Furthermore, plaintiff saw Dr. Bundrick on April 15, 2003 and the doctor noted that plaintiff had reached MMI on his right shoulder. Dr. Bundrick suggested that a disability rating was needed, however, such rating is not in the record.
Plaintiff stated that when he returned to work after his knee surgery, the schedule for the line-haul drivers was changed. In order to receive the same number of work hours he received prior to his accident, plaintiff would have to work on Saturdays. This schedule change was applicable to all line-haul drivers. The defendant asserts that plaintiff refused to work on Saturdays and thus voluntarily reduced his income and is therefore not entitled to SEB. The plaintiff has failed to submit any documentation to oppose defendant's position that his reduction in wage earnings was voluntary. *190 In addition, in his deposition plaintiff stated that he did not want to work on Saturdays and would do so only when it was mandatory. Plaintiff's decision not to work on Saturdays to maintain his pre-injury wages was a preference, not due to his injuries. Defendant asserts plaintiff is not entitled to TTD because his loss of income was a result of a lay-off, not a disability. Plaintiff said after he returned to work from his knee surgery in April 1997, he worked until approximately November 1998 when he took off to have surgery on his right shoulder. He returned to work approximately in January 1999 with restrictions that he drive only. He worked his same position with restrictions from January 1999 until defendant lost its contract with Airborne Express in June 2002. At that time, plaintiff and all of the other line-haul drivers were laid off.
Plaintiff stated that he is unable to perform the duties he performed when employed by the defendant without restrictions. However, he did not present any medical evidence to support this contention, nor did he present any evidence to show that he cannot engage in any other type of employment.
Based on the record, we find that plaintiff failed to submit any evidence which created a genuine issue of material fact regarding his claim for disability benefits. Summary judgment was proper on plaintiff's claims. The WCJ's findings are supported by the record.

CONCLUSION
Accordingly, the Office of Workers' Compensation ruling granting summary judgment in favor of the defendant and against the plaintiff is affirmed.
AFFIRMED.