889 So.2d 1193 (2004)
Debbie THOMPSON, Plaintiff-Appellee
v.
THE ANIMAL HOSPITAL, Defendant-Appellant.
No. 39,154-WCA.
Court of Appeal of Louisiana, Second Circuit.
December 15, 2004.
*1196 Crawford & Anzelmo, by Donald J. Anzelmo, for Appellant.
Law Offices of Street & Street, by C. Daniel Street, for Appellee.
Before PEATROSS, DREW & MOORE, JJ.
MOORE, J.
The employer, The Animal Hospital, appeals a judgment of the WCJ assessing a penalty of $500 and attorney fee of $1,000 for refusal to authorize treatment by the claimant's choice of neurosurgeon, and a penalty of $2,000 and attorney fee of $7,000 for refusal to authorize treatment by the claimant's general practitioner. For the reasons expressed, we amend and affirm.

Factual and Procedural Background
The claimant, Debbie Thompson, was employed as a veterinary assistant at The Animal Hospital on Cypress Street in West Monroe. In November 2001, she slipped and fell on a freshly-mopped concrete floor, landing on her rump and injuring her thigh and lower back. She testified two years later that she still suffers pain in both hips and buttocks, with pain that radiates down her right leg to the heel. The Animal Hospital has paid her indemnity benefits ever since the accident.
Ms. Thompson initially went to Dr. Daniel, a general practitioner in West Monroe, who ordered an MRI which showed a protrusion at the L5-S1 level with "mass effect on the thecal sac and perhaps slight mass effect on both S-1 nerve roots." He gave her prescriptions for Vioxx, an acute pain medication, and Celexa, an anti-depressant. In January 2002, he referred her to Dr. Gavioli, an orthopedic surgeon.
Dr. Gavioli ordered a second MRI which showed a "small central disc protrusion at L5-S1 with no significant nerve root impingement." He continued the Vioxx and Celexa; he also gave her a Medrol Dosepak and referred her to the Riverwest Clinic for physical therapy, which seemed to relieve the pain. A Functional Capacity Evaluation ("FCE") administered in May 2002 found Ms. Thompson could work at a "medium PDC [physical demand characteristic] level," and on May 24 Dr. Gavioli *1197 released her to medium work with a 5% whole body permanent physical impairment.
Ms. Thompson testified, however, that after the therapy and medication ended, her pain returned, so she went back to Dr. Gavioli in July 2002. Finding her symptoms "out of proportion to the amount of the pathology that the MRI showed," he recommended a lumbar myelogram, CAT scan, bone scan, EMG and nerve conduction studies. The Animal Clinic's compensation carrier, LUBA, refused to authorize any of these diagnostics or additional physical therapy. In late August, Dr. Gavioli wrote that because of LUBA's failure to approve his therapy and treatment, he could not longer treat Ms. Thompson.
Ms. Thompson filed her first disputed claim in September 2002, seeking authorization for the recommended tests as well as penalties and attorney fees. By amended petition, she requested authorization for treatment from Dr. McHugh, a neurosurgeon. The matter was fixed for trial in June 2003; however, the parties settled, with The Animal Hospital agreeing to pay a penalty of $4,000 and an attorney fee of $3,000. The consent judgment was silent as to Ms. Thompson's claim for treatment with Dr. McHugh, her choice of neurosurgeon.
Since Dr. Gavioli would no longer treat her, Ms. Thompson went to LUBA's choice of orthopedic surgeon, Dr. Brown. The instant record does not include any of Dr. Brown's office notes or reports, but Ms. Thompson admitted that she told him she was feeling better and did not ask for a referral to any other doctor, and that he released her to return to work.
Ms. Thompson filed the instant disputed claim on August 19, 2003, seeking approval for treatment with Dr. McHugh, with penalties and attorney fees for refusing it; she also filed a rule for choice of physician, which the WCJ granted after a hearing on November 5, 2003. This court denied The Animal Hospital's writ on December 11.[1] On January 20, 2004, Ms. Thompson filed a supplemental petition alleging that despite the WCJ's ruling and this court's writ denial, LUBA was still refusing to approve treatment with Dr. McHugh, and had even refused to let her return to Dr. Daniel, the general practitioner. She prayed for approval to see both doctors and for penalties and attorney fees for both refusals.
At trial on March 10, 2004, the WCJ stated the only issue was "the award of penalties and attorney fees for the first refusal." The Animal Hospital stipulated that LUBA refused to authorize a visit to Dr. Daniel on January 15, 2004, but argued that this visit was unnecessary since she had standing approval to see LUBA's orthopedist, Dr. Brown. It also argued that at the time, it was unaware of the writ ruling, but that once it received this information, it approved the Dr. McHugh visit. Ms. Thompson admitted she saw Dr. McHugh on February 10; his medical report is not in the record. She testified that she paid her own money to see Dr. Daniel in January and get refills of Vioxx and Celexa. Ms. Thompson also introduced into evidence copies of correspondence between the parties' counsel, and LUBA's claims adjuster, from July through November 2003.
The WCJ ruled from the bench that The Animal Hospital had no reasonable basis *1198 to deny Ms. Thompson treatment with Dr. McHugh; that The Animal Hospital "spoiled" her relationship with Dr. Gavioli, so she was entitled to select another treating physician; and thus she could choose another physician in another specialty. The WCJ assessed a penalty of $500 and attorney fee of $1,000 with respect to Dr. McHugh. The WCJ further found there was "absolutely no reasonable basis" to deny her treatment with Dr. Daniel, as he was already her treating physician. Calling it an "absolute arbitrary and capricious action," the WCJ assessed a penalty of $2,000 and attorney fee of $7,000 with respect to Dr. Daniel.
The Animal Hospital now appeals, advancing five assignments of error.

Discussion: Necessity of Neurosurgeon Treatment
By its first two assignments of error, The Animal Hospital urges the WCJ was plainly wrong to find that Dr. McHugh's treatment was necessary under La. R.S. 23:1203. In support, it argues that Ms. Thompson's own orthopedic surgeon, Dr. Gavioli, released her to work in May 2002; he found her continued symptoms "out of proportion" to the MRI in July 2002; Dr. Brown, another orthopedist, also released her to work after she told him she was feeling better. The Animal Hospital adds that Ms. Thompson produced no corroboration for the need for neurosurgical treatment, thus making this part of the judgment manifestly erroneous.
Ms. Thompson responds that this argument is not properly before the court because the judgment in rule authorizing medical treatment was an appealable final judgment which The Animal Hospital did not timely appeal. In support she cites this court's unpublished writ order in Thornton v. Louisiana Plastic Indus., 38,698 (La.App. 2 Cir. 3/4/04). Unpublished opinions shall not be "cited, quoted or referred to by any counsel, or in any argument, brief, or other materials presented to any court, except in continuing or related litigation." URCA-Rule 2-16.3. As an unpublished writ order, Thornton has no precedential value. State v. Williams, XXXX-XXXX (La.10/15/02), 830 So.2d 984; Albe v. Louisiana Workers' Comp. Corp., 97-0581 (La.10/21/97), 700 So.2d 824, fn. 1.
On the merits, Ms. Thompson contends that Dr. Gavioli's office records substantiate her complaints of continued pain even after the release, and show that in July 2002 he recommended another battery of tests "to see if there is more pressure on the nerves than the MRI suggested."
In the event of a compensable injury, the employer is obligated to furnish all necessary medical expenses. La. R.S. 23:1203 A. The claimant must prove by a reasonable preponderance of the evidence the necessity and relationship of the treatment provided by the physician to the work-related accident. Lewis v. Chateau D'Arbonne Nurse Care Center, 38,394 (La.App. 2 Cir. 4/7/04), 870 So.2d 515, and authorities therein. The WCJ's findings are subject to the manifest error rule. Dean v. Southmark Const., XXXX-XXXX (La.7/6/04), 879 So.2d 112; Cox v. Roofing Supply Inc., 36,275 (La.App. 2 Cir. 8/14/02), 825 So.2d 1271. Applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether its conclusion was a reasonable one. Banks v. Industrial Roofing & Sheet Metal Works Inc., 96-2840 (La.7/1/97), 696 So.2d 551.
The medical evidence is conflicting. The initial MRI, ordered by Dr. Daniel shortly after the accident, found disc protrusion with "mass effect" on the thecal sac and perhaps on both S-1 nerve roots; the second MRI, ordered by Dr. Gavioli, found no significant nerve root impingement. Although the May 2002 FCE cleared her to *1199 return to medium-level work, Ms. Thompson testified that ending the medicine and therapy led to a resumption of pain. As noted, Dr. Gavioli later recommended a battery of tests, indicating that he accepted her complaints of continued pain. Ms. Thompson admitted she did not reiterate these complaints to Dr. Brown, but her history with Dr. Gavioli indicates an intermittent and recurrent condition. Notably, none of Dr. Brown's records were offered in evidence.
From this record, the WCJ was entitled to find that Ms. Thompson showed, by a preponderance of the evidence, that she was still suffering with pain from the work-related accident and that treatment by two orthopedists had failed to alleviate it. The WCJ was not plainly wrong to find that treatment by a neurosurgeon was warranted. These assignments of error lack merit.

New Choice of Treating Physician
By its third assignment, The Animal Hospital urges the WCJ failed to apply the proper interpretation of La. R.S. 23:1121 B, which permits the claimant to select only one treating physician in any field or specialty. It contends that after Ms. Thompson chose Dr. Gavioli as her treating orthopedist, the statute does not permit her the second choice of Dr. McHugh as her treating neurologist. In support, it cites Jasper v. Memorial Medical Center, XXXX-XXXX (La.App. 4 Cir. 6/11/03), 853 So.2d 21, as virtually apposite to the instant case. The Jasper court held that the statute "does not invest the worker's compensation claimant with the right to multiple treating physicians."
Ms. Thompson responds that the statute confers an unqualified right to select a treating physician. Smith v. Southern Holding Inc., XXXX-XXXX (La.1/28/03), 839 So.2d 5. She contends that the conduct of The Animal Hospital's insurer, LUBA, induced Dr. Gavioli to stop treating her, so she was entitled to select a new treating physician in another field. Finally, she urges that her position is unlike that of the claimant in Jasper, and in fact is closer to the Jasper court's dictum, "If relator felt that she could more properly be treated by a neurosurgeon than an orthopedist, she would be entitled to change her treating physician to one in another specialty." 853 So.2d at 24.
The right of examination is regulated by R.S. 23:1121 B, which provides:
The employee shall have the right to select one treating physician in any field or specialty. The employee shall have a right to the type of summary proceeding provided for in R.S. 23:1124(B), when denied his right to an initial physician of his choice. After his initial choice the employee shall obtain prior consent from the employer or his workers' compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.
This statute gives an injured employee an absolute right to select one physician in any field without the approval of the employer. Smith v. Southern Holding, supra. Selection of a new physician in a different specialty does not require such approval. Davis v. Sheraton Operating Corp., 1997-2784 (La.App. 4 Cir. 5/20/98), 713 So.2d 814.
The WCJ was unfavorably impressed with LUBA's conduct in refusing to authorize any of the diagnostics or therapy recommended by Dr. Gavioli in July 2002. Because of this, Dr. Gavioli ended the physician-patient relationship. The fact that Ms. Thompson later submitted to treatment with LUBA's choice, Dr. Brown, does not mean she "selected" him as her treating physician. Smith v. Southern *1200 Holding, supra. Without a treating physician but still in pain, she was entitled to seek treatment from a doctor in a different specialty. R.S. 23:1121 B; Davis v. Sheraton Operating Corp., supra. Unlike the claimant in Jasper, Ms. Thompson was not seeking simultaneous treatment from multiple physicians in multiple fields. On this record, the WCJ was not legally wrong to authorize the examination by Dr. McHugh. This assignment of error lacks merit.

Penalties and Attorney Fees
By its fourth and fifth assignments, The Animal Hospital contests the award of penalties and attorney fees. It contends that it reasonably relied on the FCE, which cleared Ms. Thompson to return to medium-duty work, and on Drs. Gavioli and Brown, who both released her to return to work; it also cites Ms. Thompson's failure to report any pain to Dr. Brown. It submits that on this evidence, it reasonably controverted Ms. Thompson's claim, thus exempting it from penalties and attorney fees under La. R.S. 23:1201 F(2). It also urges that as the statute provided at the time of trial, penalties were not available for the refusal to approve treatment with Dr. McHugh. Smetak v. Louisiana Workers' Comp. Corp., 97-1497 (La.App. 3 Cir. 4/15/98), 711 So.2d 417. It also shows that the WCJ used the wrong legal standard, "arbitrary and capricious," which applies only to cases where the employer discontinues payment of benefits. La. R.S. 23:1201.2.[2] Finally, it contends that even if attorney fees were warranted, they must be reasonable, rationally related to the degree of skill and work involved in the case, the amount of the claim, the amount recovered and the amount of time devoted to the case. Ward v. Phoenix Operating Co., 31,656 (La.App. 2 Cir. 2/24/99), 729 So.2d 109. They may not be imposed as a punitive measure against an employer for its conduct in processing a claim. Id.; Langley v. Petro Star Corp. of La., XXXX-XXXX (La.6/29/01), 792 So.2d 721.
Ms. Thompson responds that gauged by either the "arbitrary and capricious" standard of the former R.S. 23:1201.2 or the "reasonably controverted" standard of R.S. 23:1201 F, The Animal Hospital had no justification to deny her treatment with either Dr. Daniel or Dr. McHugh. She submits that the WCJ carefully weighed the competing evidence and her ultimate decision was not plainly wrong. Harvey v. B E & K Const., 30,825 (La.App. 2 Cir. 8/19/98), 716 So.2d 514. Finally, she urges that the rationale of Smetak, supra, does not apply when the employer's conduct effectively delays medical treatment. Livings v. Langston Cos., 96-636 (La.App. 3 Cir. 12/5/96), 685 So.2d 405.
At the time of Ms. Thompson's injury, the penalty statute provided as follows, in pertinent part:
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim * * *. Penalties shall be assessed in the following manner:
* * *

*1201 (2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
An employer's failure to authorize a medical procedure for an employee otherwise eligible to receive worker's compensation is deemed to be the failure to furnish compensation benefits, thus triggering the penalty provisions of R.S. 23:1201. Authement v. Shappert Engineering, XXXX-XXXX (La.2/25/03), 840 So.2d 1181; Gay v. Georgia Pacific Corp., 32,653 (La.App. 2 Cir. 12/22/99), 754 So.2d 1101. In the event of refusal to provide medical benefits, as distinguished from the termination of such benefits, the "reasonably controverted" standard of R.S. 23:1201 F applies. Id.
To determine whether a claimant's right has been reasonably controverted, the court must ascertain whether the employer or its insurer engaged in a nonfrivolous legal dispute or possessed factual or medical information presented by the claimant throughout the time it refused to pay all or part of the benefits allegedly owed. Brown v. Texas-LA Cartage Inc., 98-1063 (La.12/1/98), 721 So.2d 885. Reasonably controverting a claim means that the employer or insurer has sufficient factual and medical information to reasonably counter that provided by the claimant. Gay v. Georgia Pacific Corp., supra, and authorities therein.
The WCJ has great discretion in determining whether to allow or disallow penalties and attorney fees and her decision will not be disturbed absent manifest error. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706; Gay v. Georgia Pacific Corp., supra. As such, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review; to reverse the WCJ's findings of fact, the reviewing court must conclude that a reasonable basis for that finding does not exist in the record. Dean v. Southmark Const., supra.
As for Dr. McHugh, The Animal Hospital's initial refusal to approve his treatment may have been justified. However, Ms. Thompson filed the instant disputed claim on August 19, 2003; the WCJ rendered a judgment on November 5; this court denied the employer's writ application on December 11; Ms. Thompson did not get to see Dr. McHugh until February 2004. The fact that she could have returned to Dr. Brown, LUBA's orthopedist, in the intervening two months, does not reasonably controvert her right to obtain treatment with Dr. McHugh after two courts approved it.
As for Dr. Daniel, he prescribed Vioxx, a pain medication which both Drs. Gavioli and Brown refilled periodically. Counsel formally requested approval for her to see Dr. Daniel again in October 2003, but this was denied. Ms. Thompson testified that because of continued pain, she tried to see Dr. Daniel in January 2004, but LUBA again refused to approve the visit. Admittedly, these requests were somewhat clouded by the fact that she had recently told Dr. Brown she was not in pain. However, in light of her medical history since the accident, Dr. Gavioli's recommendation of additional tests, and Ms. Thompson's two clear requests to see Dr. Daniel again, we cannot say the WCJ abused her discretion in finding that The Animal Hospital did not reasonably controvert this claim for medical treatment. The Animal Hospital's fourth assignment of error lacks merit.
We have closely reviewed the quantum of these awards. The rationale for attorney fees under R.S. 23:1201 F is to deter indifference and undesirable conduct by employers and insurers toward *1202 injured employees. Langley v. Petro Star, supra. When an attorney fee is warranted, it must reflect the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the claimant, and the amount of time devoted to the case. Id.; Ward v. Phoenix Operating Co., supra. The degree of the employer's bad faith is not an appropriate factor. Id.
Ms. Thompson's counsel has received an attorney fee, under R.S. 23:1201 F, of $3,000 for his work in gaining approval of the tests recommended by Dr. Gavioli, and in the instant judgment received $500 for his work in obtaining treatment by Dr. McHugh. The record does not reflect how much of counsel's other work in this case  aside from a letter to LUBA's adjuster and one to opposing counsel, seeking reimbursement of Dr. Daniel's $60 bill  was specifically dedicated to securing approval for treatment with Dr. Daniel. The attorney fee of $7,000 appears to reflect the WCJ's indignation at the employer's reluctance to provide palliative care, but this is not a proper consideration. Langley v. Petro Star, supra. In the event of an excessive attorney fee, the court is authorized to lower it to an amount "reasonable under the circumstances." Id. On the instant record, we conclude an award of $2,500 is reasonable. Langley v. Petro Star, supra (reduced fee from $3,000 to $1,500); Ward v. Phoenix Operating Co., supra (reduced fee from $4,000 to $2,500); Harvey v. B E & K Const. Co., 34,057 (La.App. 2 Cir. 11/15/00), 772 So.2d 949, writ denied, XXXX-XXXX (La.3/9/01), 786 So.2d 732 (reduced fee from $6,000 to $3,000); Tatum v. St. Patrick's Psychiatric Hosp., 34,957 (La.App. 2 Cir. 8/22/01), 794 So.2d 958 (reduced fee from $9,000 to $3,500). The judgment will be amended accordingly.

Conclusion
For the reasons expressed, the judgment is amended to reduce from $7,000 to $2,500 the attorney fee for The Animal Hospital's refusal to approve Ms. Thompson's medical treatment by Dr. Warren Daniel. In all other respects, the judgment is affirmed. Costs are assessed against the appellant, The Animal Hospital.
AMENDED AND AFFIRMED.
NOTES
[1] The Animal Hospital applied for a writ from this ruling, urging that La. R.S. 23:1121 B allowed her to choose only one physician in one specialty, citing Jasper v. Memorial Medical Center, XXXX-XXXX (La.App. 4 Cir. 6/11/03), 853 So.2d 21. This court denied the writ on December 11, 2003, finding the exercise of its supervisory jurisdiction was not warranted at the time.
[2] La. R.S. 23:1201.2 was repealed by 2003 Acts No. 1204, effective August 15, 2003. The substance of former § 1201.2 is now contained in R.S. 23:1201 I and J. This amendment also changed subsection 1201 F, explicitly making it applicable to an employer's refusal to approve the claimant's request to change treating physicians when consent is required.