996 So.2d 373 (2008)
Kenny CHEATHAM, Plaintiff-Appellant
v.
LUBERSKI, INC. d/b/a Hidden Villa Ranch, Defendant-Appellee.
No. 43,603-WCA.
Court of Appeal of Louisiana, Second Circuit.
September 17, 2008.
Kenny Cheatham, In Proper Person.
Pettiette, Armand, Dunkelman, Woodley, Byrd & Cromwell, L.L.P., By Robert A. Dunkelman, Shreveport, for Appellees Luberski, Inc. d/b/a Hidden Villa Ranch and Travelers Property Casualty Co. of America.
Before PEATROSS, MOORE and LOLLEY, JJ.
*374 MOORE, J.
The compensation claimant, Kenny Cheatham, appeals a partial summary judgment that denied his request to change his choice of orthopedist and a summary judgment that rejected his claims for indemnity benefits and medical expenses. We affirm.

Procedural Background
Cheatham was employed as a laborer for Hidden Villa Ranch, a Haynesville plant that made egg cartons, at an average weekly wage of $320. While at work on June 15, 2006, he slipped on a short flight of steps, fell and landed on his back. Claiming to have injured his neck and lower back, he initially saw his family doctor, Dr. John Smith III, who ordered an MRI on June 19. Under circumstances that do not appear on the record, Cheatham went to an orthopedist, Dr. Gordon Mead, on October 7, and signed an LDOL Form 1121 designating Dr. Mead as his choice of orthopedic surgeon on October 9.
Dr. Mead testified by deposition that the MRI showed only degenerative changes in Cheatham's spine with no acute trauma; on examination, he found a full range of motion in both Cheatham's back and neck. He diagnosed cervical and lumbar strain and prescribed physical therapy. Although Cheatham complained that the pain was getting worse, Dr. Mead found no objective symptoms and released him to his former employment on November 6, 2006. Hidden Villa's compensation carrier, Travelers, promptly terminated all benefits.
Cheatham visited Dr. Mead once more in December, complaining of continued low back pain, muscle spasms and numbness down his right leg. Dr. Mead found no spasms or any need to refer Cheatham to a spine specialist or general practitioner. He speculated that Cheatham might need pain management, but not as a result of any work-related accident, and declined to comment on his "depression or anxiety" issues.
Acting pro se, Cheatham filed the instant disputed claim in January 2007. Two weeks later, represented by counsel, he filed a duplicate claim, demanding reinstatement of weekly benefits and the choice of Dr. Austin Gleason as his orthopedist. Travelers responded that Cheatham had formally chosen Dr. Mead as his orthopedist on October 9, and moved for partial summary judgment dismissing this portion of the claim.
Cheatham then filed an amended claim, demanding the choice of Dr. Euby J. Kerr as his orthopedic spine specialist and of Dr. John Smith III as his general practitioner, and penalties and attorney fees. He also moved for an expedited hearing on the choice of orthopedist, attaching in support the deposition of Dr. Mead in an unrelated case in which Dr. Mead admitted he does not perform back surgery. In a supplemental motion, Cheatham asked for the choice of Dr. Marco Ramos as his neurosurgeon. He later filed a copy of Dr. Mead's deposition concerning this case.
After a hearing on the motion for partial summary judgment in July 2007, WCJ Sheral Kellar found that Cheatham had officially selected Dr. Mead as his choice of orthopedist, that Dr. Mead found no medical need for any further treatment, and that Cheatham offered nothing to refute these findings. She granted partial summary judgment dismissing the claim for a new choice of physician.
Travelers then filed a motion for summary judgment regarding the balance of Cheatham's claims. In support it attached portions of Dr. Mead's and Cheatham's depositions, and Cheatham's Form 1121 choice of Dr. Mead as his orthopedist. *375 Also attached, apparently,[1] was an LSUMC radiology report in which a Dr. Gonzalez-Toledo read a subsequent spinal MRI as showing no compression or misalignment, normal signal intensity, and only degenerative changes. Shortly after this, Cheatham's counsel filed a motion to withdraw; WCJ Ryan Gatti granted the motion, giving Cheatham 30 days to retain new counsel.
At the hearing on the MSJ, on January 11, 2008, Cheatham appeared without counsel but was sworn and stated he wished to proceed. The WCJ then allowed him to testify: he related the details of the accident, that he had never heard of Dr. Mead when he signed the Form 1121, and that after Dr. Mead released him, he tried to work but simply could not endure the pain. He also offered uncertified copies of the LSUMC radiology report and a report from Dr. Kerr recommending pain management and light-duty work. Travelers argued that under La. R.S. 23:1121 D, no further medical evidence was admissible after Dr. Mead's final report, and that Cheatham offered no competent evidence that he was unable to work or entitled to any further medical treatment.
WCJ Gatti ruled that Cheatham selected Dr. Mead as his orthopedist and was bound by what that doctor said; also, there were no grounds to vacate WCJ Kellar's prior ruling. Further, Cheatham's exhibits were inadmissible under R.S. 23:1121. While subtly questioning Dr. Mead's assessment, the WCJ found no evidence to create a genuine issue of material fact. He granted summary judgment dismissing all claims.

The Parties' Positions
Cheatham has appealed, filing a pro se brief with no assignments of error but two "statements to be considered." First, he should have been able to change treating physician to one of his own choice; second, Dr. Mead did not have his medical interest at heart. He restates the procedural history and discloses that Travelers offered him a $2,500 settlement which he declined (leading his attorney to withdraw representation). He then relates various facts not in the record, e.g., that two nurses "pressured" him into picking Dr. Mead, who did a "coup de grace" on him. He urges that a court may approve a change of physician if that change is reasonable. In support, he cites Stelly v. United Parcel Serv., 600 So.2d 156 (La.App. 3 Cir.1992).
Travelers responds that the choice of physician, R.S. 23:1121 B, is read in conjunction with the duty to furnish medical expenses, R.S. 23:1203: the claimant must establish the medical necessity of the treatment sought, including treatment by a new choice of specialist. Brantley v. Delta Ridge Implement Inc., 41,190 (La.App. 2 Cir. 6/28/06), 935 So.2d 308. Courts often refuse to allow claimants to select a new specialist when the chosen specialist says this is not medically necessary. Captain v. Citgo Petr. Corp., 2006-481 (La.App. 3 Cir. 9/27/06), 940 So.2d 731; Scott v. Piccadilly Cafeteria, XXXX-XXXX (La.App. 3 Cir. 4/1/98), 708 So.2d 1296. Dr. Mead was emphatic that no further treatment or referral was necessary.
Travelers also urges the summary judgment was proper as under R.S. 23:1121 D, once the chosen physician makes his report, the WCJ is not bound to accept any other opinions of physicians to examine the *376 claimant at his own request. Lang-Parker v. Unisys Corp., XXXX-XXXX (La.App. 1 Cir. 10/5/01), 809 So.2d 441. Further, Cheatham's offerings were not by affidavit or otherwise certified, and thus inadmissible on the MSJ. Powers v. Tucker, 29,190 (La.App. 2 Cir. 2/26/97), 690 So.2d 922; Sanders v. J. Ray McDermott Inc., XXXX-XXXX (La.App. 1 Cir. 11/7/03), 867 So.2d 771. Travelers seeks affirmance.

Discussion
The brief of the appellant shall set forth, inter alia, a specification or assignment of alleged errors. URCA Rule 2-12.4. Cheatham's brief fails to specify or assign any errors and is technically out of compliance with Rule 2-12.4. Washington v. First Choice Trucking, 06-1479 (La. App. 3 Cir. 3/7/07), 953 So.2d 107; Costales v. Turner Indus., 05-36 (La.App. 5 Cir. 5/31/05), 905 So.2d 410, writ denied, XXXX-XXXX (La.1/9/06), 918 So.2d 1056. In light of his pro se status, however, this court will attempt to divine the substance of his arguments and treat them as though properly raised. Id.
The thrust of Cheatham's claim is that the WCJ erred in denying his rule to change his choice of orthopedist from Dr. Mead to Dr. Gleason (or perhaps Dr. Kerr). As it pertains to this case, the choice of physician is regulated by La. R.S. 23:1121 B(1), which provides in part:
The employee shall have the right to select one treating physician in any field or specialty. * * * After his initial choice the employee shall obtain prior consent from the employer or his workers' compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.
This statute does not invest the claimant with the right to multiple treating physicians. Thompson v. The Animal Hosp., 39,154 (La.App. 2 Cir. 12/15/04), 889 So.2d 1193; Jasper v. Memorial Medical Center, XXXX-XXXX (La.App. 4 Cir. 6/11/03), 853 So.2d 21. The claimant is not entitled to treatment by a new choice of orthopedist simply because the original choice of orthopedist released him to return to work. Wiley v. Kenneth Parker Logging, 97-1247 (La.App. 3 Cir. 3/6/98), 711 So.2d 297. As with a claim for medical expenses under R.S. 23:1203, the claimant must show that a choice of a new treating physician is medically necessary. Thompson v. The Animal Hosp., supra; Captain v. Citgo Petr. Corp., supra; Scott v. Piccadilly Cafeteria, supra.
Cheatham officially selected Dr. Mead as his orthopedist by completing and signing a Form 1121 to that effect on October 9, 2006. In support of its motion for partial summary judgment, Travelers offered Dr. Mead's deposition finding no acute trauma to Cheatham's back, and a full range of motion in both his back and neck. Dr. Mead ascribed any lingering problems to degenerative changes unrelated to the accident at work and released him to his former employment on November 6, 2006. The original WCJ aptly observed that Cheatham offered nothing to refute the selection of Dr. Mead or his medical conclusions.
At the second hearing, the successor WCJ confirmed this ruling. The only additional evidence offered by Cheatham was an uncertified copy of a report from Dr. Kerr, recommending pain management and light-duty work, but obviously this does not qualify as part of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which are competent evidence on a motion for summary judgment. *377 La. C.C.P. art. 966 B; Citibank South Dakota N.A. v. Stanford, 42,191 (La. App. 2 Cir. 5/9/07), 956 So.2d 756; Sanders v. J. Ray McDermott Inc., supra. Cheatham also offered his own "testimony" to the effect that he had attempted to work but was unable, owing to the pain; this is incompetent, however, because it is inappropriate for the WCJ to take testimony in open court on a motion for summary judgment. Gilmore v. Wickes Lumber, 2004-2769 (La.App. 1 Cir. 2/17/06), 928 So.2d 668, and citations therein; see also Leonard v. Stephens, 588 So.2d 1300 (La.App. 2 Cir.1991). Even if we were to consider his testimony, we would be constrained to find it does not meet the standard of competent evidence "for which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself." La. R.S. 23:1317 A. The WCJ properly denied Cheatham's request for a change of orthopedist.
Cheatham's second argument appears to be that he should be relieved of his original choice of orthopedist because Dr. Mead did not have his medical interest at heart. As noted above, the "evidence" in opposition to Travelers' motion for summary judgment was not competent evidence under La. C.C.P. art. 966. While we are sympathetic to Cheatham's dilemma, we feel that his situation is not exceptional. Most people have no established relationship with an orthopedist or a spinal specialist until after they sustain a back injury. Like Cheatham, most claimants must rely on the recommendation of their family doctor or compensation carrier. Cheatham, notably, did not sign the Form 1121 until nearly four months after his work-related injury and initial treatment with Dr. Smith; this circumstance bears none of the hallmarks of a hasty or uninformed decision. In the absence of competent evidence or very strong circumstances that the choice of Dr. Mead resulted from error or fraud, the WCJ did not err in granting the summary judgment.

Conclusion
For the reasons expressed, the judgments are affirmed. Costs are to be paid by Cheatham to the extent permitted by La. C.C.P. art. 5188.
This opinion is designated for publication in conformity with La. R.S. 23:1310.5 F.
AFFIRMED.
NOTES
[1] This report appears at R.pp. 104-107, between Travelers' other attachments and the certified mail receipts. However, it is dated January 7, 2008, two months after the MSJ was filed, and is marked "Exhibit P-2, MSJ." It appears to be a Xerox copy of what Cheatham offered at the hearing on January 11.