STEWART, J.
| ¡Defendant, Fresenius Medical Care Holding, (“Fresenius”) appeals a ruling from the Office of Worker’s Compensation granting the plaintiff, Sheri Massey, supplemental earnings benefits from May 4, 2011, to January 15, 2013, in the amount of $579.00 per week; temporary total disability benefits in the amount of $579.00 per week from January 15, 2013, to the present and continuing; and $4,000.00 in penalties and $10,000.00 in attorney fees for Fresenius terminating payments and not timely authorizing and paying for treatment with Massey’s choice of physician. For the reasons assigned in this opinion, we affirm.
FACTS AND PROCEDURAL HISTORY
On August 11, 2010, Massey, a registered nurse employed as a floor nurse by Fresenius, was injured in the course and arising out of her employment in a motor accident while traveling from her home in Winnsboro, Louisiana, to her job in Columbia, Louisiana.[1] She received emergency care at Richardson Medical Center that day, after complaining of injuries to her back, left wrist, and left arm.
On August 16, 2010, she began treatment with the orthopedist of her choice, Dr. Scott McClelland. Dr. McClelland noted that Massey had injured her left wrist in a motor vehicle accident. In a patient questionnaire, Massey expressed concern about her mid-back. On September 7, 2010, she returned to Dr. McClel-land for a follow-up appointment. No complaints regarding Massey’s back were noted. During an appointment with Dr. McClelland on November 9, 2010, she complained of a “flare-up” of pain in [2her thoracolumbar spine. On November 13, 2010, Dr. McClelland found that she was unable to work, but did not provide treatment for her mid-back pain.
On April 15, 2011, Massey underwent a functional capacity evaluation (“FCE”). It was determined that she should not return to her pre-injury job without restrictions. Specifically, she was released to job activity restricted to occasionally lifting no more than 25 pounds waist-to-shoulder, 30 pounds floor-to-waist, and 20 pounds floor-to-shoulder. She could frequently lift 15 pounds waist-to-shoulder, 20 pounds floor-to-waist, and 15 pounds floor-to-shoulder. Dr. McClelland agreed with the FCE’s determination, and released her to light duty. She did not return to Dr. McClel-land for treatment thereafter.
On April 21, 2011, Robbin Martin, the Director of Operations at Fresenius, contacted Massey via telephone to inform her that a position was available for her at its dialysis facility in Monroe, Louisiana, that met the restrictions established by the FCE. At the conclusion of their conversation, Massey was informed that she must accept or decline the job by April 25, 2011. On April 27, 2011, after not hearing from Massey, Martin sent her a letter informing her that the position offered could accommodate her restrictions. After again not hearing from Massey, Fresenius placed her on the Monroe facility’s work schedule. After Massey did not appear for work, she was deemed to have resigned, and her *1023 employment was terminated, effective May 12, 2011.
|30n May 20, 2011, Massey filed a disputed claim for compensation, disputing the termination, of her benefits and her choice pf physician. She also sought penalties and attorney fees. On January 4, 2012, Massey filed a motion for choice of treating physician, seeking an order compelling Fresenius to authorize and pay for treatment with Dr. Bernie McHugh. The motion was granted on March 12, 2012, and Fresenius sought supervisory writs from this court. The application was denied on April 27, 2012.
On May 31, 2012, Dr. McHugh examined Massey, and diagnosed her with fibromyal-gia and a thoracic vertebral fracture. On September 11, 2012, Dr. McHugh opined that the thoracic vertebral fracture was caused by the August 11, 2010, accident.
On August 15, 2013, the trial took place. On November 13, 2013, the Worker’s Compensation Judge orally rendered its judgment, finding that Massey’s back complaints were work-related, and that she met her burden of proving her inability to earn 90 percent or more of her pre-injury wage through medical evidence presented by Dr. McClelland and Dr. McHugh. Massey was awarded supplemental earnings from May 5, 2011, to January 15, 2013, in the amount of $579.00 per week, and temporary total disability benefits in the amount of $579.00 per week from January 15, 2013, to the present and continuing. Massey was also awarded $4,000 in penalties and $10,000 in attorney’s fees for Fresenius terminating payments and not timely authorizing and paying for treatment with Dr. McHugh.
Fresenius appeals, asserting three assignments of error.
J4LAW AND DISCUSSION

Beneñts

In its first assignment of error, Freseni-us asserts that the trial court erroneously determined that Massey was entitled to compensation benefits from May 5, 2011, to present. More specifically, it argues that it offered Massey a position that accommodated her restrictions and paid more than her pre-injury wages.
Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551; Grambling State Univ. v. Walker, 44,995 (La.App.2d Cir.3/3/10), 31 So.3d 1189. In applying the manifest error-clearly wrong standard, the appellate court does not determine whether the trier of fact was right or wrong, but determines whether the factfinder’s conclusion was a reasonable one. Id. Where there are two permissible views of the evidence, a factfinder’s choice between them can never be manifestly erroneous or clearly wrong. Thus; if the factfinder’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990); Grambling, supra.
An employee is entitled to receive workers’ compensation benefits for personal injuries from an accident arising out of and in the course of his employment. La. R.S.' 23:1031(A). The purpose of supplemental earnings ^benefits (“SEB”) is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident. Banks, supra; Pinkins v. Cardinal Wholesale Supply, Inc., *1024 619 So.2d 52 (La.1993). An employee is entitled to receive SEB if he or she sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his or her average pre-injury wage. La. R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Banks, supra; Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733. This analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers’ compensation is to be liberally construed in favor of the coverage. Banks, supra; Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989).
Once the employee’s burden is met, the burden shifts to the employer who, in order to defeat the employee’s claim for SEB or establish the employee’s earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to, or proven to be available to, the employee in his or the employer’s community or reasonable geographic region. La. R.S. 23:1221(3)(c)(i); Banks, supra; Daigle, supra. Actual job placement is not required. Banks, supra.
In Banks, supra, the supreme court applied the “minimum” standard test, concluding that an employer may discharge its burden of proving j ob | (¡availability by establishing, at a minimum, the following by competent evidence:
1. the existence of a suitable job within claimant’s physical capabilities and within claimant’s or the employer’s community or reasonable geographic region;
2. the amount of wages that an employee with claimant’s experience and training can be expected to earn in that job; and
3.an actual position available for that particular job at the time that .the claimant received notification of the job’s existence.
By suitable job, we mean a job that claimant is not only physically capable of performing, but one that also falls within the limits of the claimant’s age, experience, and education, unless, of course, the employer or potential employer is willing to provide any additional necessary training or education. Banks, supra.
In this case, Massey was unable to return to her pre-injury job as a floor nurse at Fresenius. Martin testified that Fresenius did not have any daytime positions available that would accommodate Massey’s physical restrictions. She contacted Massey on April 21, 2011, to offer her a job that was being “created” in Fresenius’s nighttime dialysis program at Ouachita Dialysis in Monroe, Louisiana, that did not involve lifting. The job that was being “created” in Fresenius’s nighttime dialysis program had a 10-hour shift, from 6:00 p.m. to 4:00 a.m. shift, three days a week, for a total of 30 hours a week. It was approximately 45 miles from Massey’s home, and allegedly paid an hourly rate five dollars greater that her pre-inju-ry position.
Prior to the August 11, 2010, accident, Massey was earning an average weekly wage of $1,025.60, working 40 hours per week at a rate of |7$25.64 per hour. In the job being created for Massey, she would earn approximately $30.64 per hour, and $919.20 per week, which falls below 90% of Massey’s pre-accident wages.
Martin testified there was no specific job description for the proposed job. Rather, there was one job description for all nurses at the dialysis treatment center, and it *1025 could be altered. No job description altered to accommodate Massey’s physical restrictions was submitted into evidence. Instead, an unaltered job description was submitted, and it included the following language:
The position provides direct patient care that regularly involves heavy lifting and moving of patients, and assisting with ambulation. Equipment aids and/or coworkers may provide assistance. This position requires frequent, prolonged periods of standing and the employee must be able to bend over. The employee may occasionally be required to move, with assistance, machines and equipment of up to 200 pounds, and may lift chemical and water solutions up to 30 pounds as high as five feet.
Fresenius argues that upon receiving notice of Massey’s release to light duty, it “quickly identified a position which accommodated such, paid more than Massey’s pre-injury wage and was consistent with the desired work place environment described in her employment application.” However, the nighttime dialysis program with the alleged position that Fresenius is referring to had not been approved by the state at the time Martin offered this job to Massey. This program did not commence until January 1, 2012. Massey testified that during the April 21, 2011, telephone call, Martin informed her that since she had not been working for a long period of time, she would have to enroll in a refresher course. Since the Rnighttime dialysis program did not commence until January 1, 2012, the position offered would not have been available at the end of Massey’s 12-week training period. Martin testified that until the program was approved, Massey would be placed on the daytime shift, which is a position that she would be physically unable to perform due to her physical restrictions.
Applying the “minimum” standard set forth in Banks, swpra, we conclude that the trial court did not erroneously find that Fresenius presented insufficient competent evidence to carry its burden. The trial court found that this position had only been “contemplated.” The record supports the finding that the position was unavailable, as Martin testified the modified position did not exist at the time it was offered to Massey on April 21, 2011. It was being created, but would not have been available until January 1, 2012. Fre-senius failed to establish the availability of any job that Massey was physically able to perform, and consequently, the WCJ did not err in awarding benefits to Massey. Massey would be entitled to benefits nevertheless because of her inability to earn 90% or more of her average pre-injury wage in the new position when it became available. This assignment of error is without merit.

Choice of Physician

In its second assignment of error, Fre-senius asserts that the lower court erroneously determined that Massey’s back complaints were causally related to the August 11, 2010, accident. More specifically, the trial court erred in finding that it improperly declined Massey’s request for treatment with Dr. McHugh, because she did not have a medical referral to him. [9Further, the back complaints from which the treatment was requested were not causally related to a work-related accident.
A plaintiff in a workers’ compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. Player v. International Paper Co., 39,254 (La.App.2d Cir.1/28/05), 892 So.2d 781; Albert v. Trans-Met, Inc., 38,261 (La.App.2d Cir.6/23/04), 877 So.2d 183; Qualls v. Stone Container Corp., 29,794 (La.App.2d Cir.9/24/97) 699 So.2d 1137, *1026 writ denied, 1997-2929 (La.2/6/98), 709 So.2d 736; Bruno v. Harbert Int’l. Inc., 598 So.2d 357 (La.1992).
Proof by a preponderance of the evidence means that the fact or canse sought to be proved is more probable than not. Player, supra; Albert, supra. The claimant must establish a causal link between the work-related accident and his injury. Id. If the evidence is evenly balanced or shows only some possibility that a work-related event produced the disability or leaves the question open to speculation or conjecture, then the plaintiff fails to carry the burden of proof. Id. Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the hearing officer. Player, supra; Lewis v. Chateau D’Arbonne Nurse Care Ctr., 38,394 (La.App.2d Cir.4/7/04), 870 So.2d 515.
In the event of a compensable injury, the employer is obligated to furnish all necessary medical expenses. La. R.S. 23:1203(A). The claimant must prove by a reasonable preponderance of the evidence the necessity and relationship of the treatment provided by the physician to the work-related |inaccident. Thompson v. The Animal Hosp., 39,154 (La.App.2d Cir.12/15/04), 889 So.2d 1193; Lewis, supra.
At the time of Ms. Massey’s accident, the right of examination set forth in La. R.S. 23:1121(B)(1) stated:
B. The employee shall have the right to select one treating physician in any field or specialty. The employee shall have a right to. the type of summary proceeding provided for in R.S. 23:1124(B), when denied his right to an initial physician of choice. After his initial choice the employee shall obtain pri- or consent from the employer of his workers’ compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.
This statute gives an injured employee an absolute right to select one physician in any field without the approval of the employer. Smith v. Southern Holding Inc., 2002-1071 (La.1/28/03), 839 So.2d 5; Thompson, supra. Selection of a new physician in a different specialty does not require such approval. Thompson, supra; Davis v. Sheraton Operating Corp., 1997-2784 (La.App. 4th Cir.5/20/98), 713 So.2d 814.
In the case sub judice, Dr. McClelland is an orthopedist, while Dr. McHugh is a neurosurgeon. Dr. McHugh would be categorized as a specialist in a specific field. La. R.S. 23:1121(B)(1) does not require Mrs. Massey to obtain Fresen-ius’s consent to see Dr. McHugh, since he is a doctor in another field or specialty. A referral is not required.
Fresenius argues that Massey’s initial consultation with Dr. McClelland showed that back pains she complained of were pre-existing and not related to the August 11, 2010, accident. However, it failed to explain the connection between the lower back pains she suffered from prior | nto the accident and the back pains she suffered from after the accident in a completely different location in her back, specifically, her mid-back.
When Massey sought treatment from Dr. McClelland after the accident, she complained of pain in her left arm, left wrist and mid-back. She testified that prior to the accident, she suffered from lower back pain, but that the injury to her mid-back was “much different.” Dr. McClelland did not provide any treatment for Massey’s mid-back pain, which she con *1027 tinued to suffer from after he released her to work with restrictions.
As the law has established, Massey had the right to chose another doctor in another field or specialty, namely, Dr. McHugh. After examining Massey, he determined that the mid-back pain that she was suffering from was the result of a vertebrae fracture stemming from the August 10, 2010, accident. This vertebrae fracture was not present, in an X-ray of Massey’s back taken in 2007. Massey testified that she had not injured her back in any way after 2007, other than by this August 10, 2010, accident. Further, Dr. McClelland, when asked to assume that there had not been any traumatic injury between the x-ray taken in 2007, and the August 10, 2010, accident, testified that the car accident was the most likely cause of the fractured vertebrae.
Based on the evidence presented, we find no error in the lower court’s determination that Massey’s back complaints were causally related to the August 11, 2010, accident, and ordering Fresenius to authorize and pay for her treatment with Dr. McHugh. This assignment of error lacks merit.

11;Award of Penalties and Attorney Fees

In its third and final assignment of error, Fresenius asserts that the lower court erred in awarding Massey penalties and attorney fees. It argues that it reasonably controverted Massey’s request for treatment with Dr. McHugh, and lawfully terminated her benefits when she failed to report for work after being cleared to do so. Based upon Dr. McClelland’s records, Massey’s medical history, and the absence of an actual referral to a neurosurgeon, it argues that it had valid reasons to dispute her request.
An employer’s failure to authorize a medical procedure for an employee otherwise eligible to receive worker’s compensation is deemed to be the failure to furnish compensation benefits, thus triggering the penalty provisions of R.S. 28:1201. Authement v. Shappert Engineering, 2002-1631 (La.2/25/03), 840 So.2d 1181; Thompson, supra; Gay v. Georgia Pacific Corp., 32,653 (La.App.2d Cir.12/22/99), 754 So.2d 1101. In the event of refusal to provide medical benefits, as distinguished from the termination of such benefits, the “reasonably controverted” standard of R.S. 23:1201(F) applies. Id.
To determine whether a claimant’s right has' been reasonably controverted, the court must ascertain whether the employer or its insurer engaged in nonfriv-olous legal dispute or possessed factual or medical information presented by the claimant throughout the time it refused to pay all or part of the benefits allegedly owed. Brown v. Texas-LA Cartage Inc., 98-1063 (La.12/1/98), 721 So.2d 885; Thompson, supra: Reasonably controverting a claim means that the employer or insurer has sufficient 11 ¡factual and medical information to reasonably counter that provided by the claimant. Thompson, supra; Gay, supra.
The WCJ has great discretion in determining whether to allow or disallow penalties and attorney’s fees and her decision will not be disturbed absent manifest error. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/1994), 630 So.2d 706; Thompson, supra.
Here, Dr. McHugh determined that the mid-back pain that Massey was suffering from was the result of a vertebrae fracture stemming from the August 11, 2010, accident. Dr. McClelland, when asked to assume that there had not been any traumatic injury between the X-ray taken in 2007, and the August 10, 2010, accident, testified that the car accident was *1028 the most likely cause of the fractured vertebrae. Despite this evidence, Fresenius denied Massey’s request for treatment with Dr. McHugh, and terminated her benefits when she failed to report to work for a,position that did not accommodate her physical restrictions.
Based on the evidence presented, we agree with the trial court’s determination that Fresenius lacked sufficient factual and medical information to reasonably counter that which was provided by Massey to reasonably controvert her claim. Therefore, we find that the penalties and attorney’s fees were appropriately awarded. This assignment of error is without merit.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court granting the plaintiff, Sheri Massey, supplemental earnings from May 4, 1142011, to January 15, 2013, in the amount of $579.00 per week; temporary total disability benefits in the amount of $579.00 per week from January 15, 2013, to the present and continuing; and $4,000.00 in penalties and $10,000.00 in attorney fees for Fresenius terminating payments and not timely authorizing and paying for treatment with Massey’s choice of physician. Costs of this appeal are assessed to Fresenius.
AFFIRMED.
CARAWAY, J., concurs in part and dissents in part with written reasons.

. Massey testified that Fresenius put her “on the clock” while traveling to and from Columbia, instead of paying her mileage.